ROBERT MARTIN, Sen'r, v. STEPHEN E. NASH.

1. REGISTRATION: CERTIFICATES ON ENTRY.—The registration laws of this State do not apply to certificates of entry of land from the general government, or to assignments thereof; a purchaser of land, therefore, at a sheriff's sale, made under an execution emanating from a judgment rendered against the original enterer, and after assignment of the certificate by him to a third person, will not acquire a good title, although he had no notice, either actual or constructive, of the. assignment.

2. SAME: NOTICE.—Where a party cannot make out his title but by a deed which leads him to another fact, he shall be presumed to have notice of that fact; hence, the purchaser of land at sheriff's sale, under an execution against the original enterer from the general government, will be held to have had notice of the assignment by the judgment debtor of his certificate of entry, made in the land office, whence it was issued, and before the rendition of the judgment; the law not requiring such certificate or assignment to be registered.

IN error from the Chancery side of the Circuit Court of Attala county. Hon. E. G. Henry, judge.

A full statement of the case will be found in the opinion of the court.

Martin *v.* Nash.

*George L. Potter,* for plaintiff in error,

Referring to the elaborate brief of Mr. Huntington, for the general argument of the cause, I shall notice but a point taken for defendant in error.

It is assumed that certificates of entry are assignable under our statute, (Code 858;) and that, registration not being required, the assignee will hold against a *bona fide* purchaser from the enterer. I deny these propositions.

There is no enactment making such certificates assignable, or putting them on the footing of promissory notes. Counsel mistakes the meaning of that clause of the statute relating to suits for lands entered, which declares that the certificate of entry shall be evidence of legal title in the enterer, "and his, her, or their *assigns.*" The term "assigns" does not refer to an assignee of the *certificate,* but to the assignee of the *land.* It is a technical term in conveyancing, well understood, and of most ancient use.

So essential was this word formerly considered, that it was thought a purchaser of land could not convey it away, unless he took a deed to him and his assigns. 2 Black. Com. 231, 289.

Every estate and interest in lands may be *assigned.* The technical words are *assign,* transfer, and set over. 4 Cruise, Dig. 97, §§ 17, 20.

An *assignment* is properly a transfer, or making over to another of the right one has in any estate. 2 Black. Com. 262, 326.

Covenants running with the land vest in the *assignee.* 4 Kent. 471, 472; 5 Cow. 137.

It is a known rule, that words of art thus used in a statute shall receive their technical signification; and it would be most strange to say that the legislature, by the use of this word, having plain reference to a transfer of an estate in lands, intended to make certificates transferable, like promissory notes; and especially where the course has been to declare in express terms what kind of writings may be assigned. We have an enactment for that special purpose.

Again, if assignable, it must be held that the transfer of the certificate vests the legal title, *the fee,* in the assignee of the certificate; although it is declared, that "no estate of inheritance or

freehold, &c., in lands," shall be conveyed *except by deed.* Code, 605, § 1.

It is not, however, pretended that such assignment vests a legal estate; but it is said the equitable interest passes; and the argument is, that a purchaser at sheriff's sale takes only such interest as the debtor had, and therefore, in a case like this, he takes, subject to the equitable title. Is such the policy of our law! Plainly, it is not, as regards any other *bona fide* purchasers; and why should it be as to execution purchasers? Our statutes enact, that a sale under any enrolled judgment, shall pass the title exempt from all other judgment liens, though older; that, as against purchasers, no judgment shall be a lien unless recorded; and that, as against creditors, (and purchasers under their judgments,) no deed from the defendant shall avail unless duly recorded. These provisions are plainly for the protection of creditors and purchasers at their execution sales; and the intent was to protect the purchaser, and also to insure to the debtor a fair value for his property sold under execution.

As to the argument that the sheriff can sell only such interest as the debtor has in the lands, it applies with equal force against a direct conveyance by any person. As an abstract proposition, it is true that no one can convey a greater interest than he possesses; and if a party has already conveyed a full equitable title, he has but a naked legal title to convey; and we might, with equal force, argue that a grant from him to a *bona fide* purchaser, would but pass that dry legal estate, subject to the equitable title; but the settled rule is, that an innocent purchaser, in such a case, will hold exempt from the equitable title.

The great weight of authority is in favor of the rule that a purchaser at sheriff's sale "holds the estate, discharged of latent trusts." *M'Cormick* v. *M'Murtrie*, 4 Watts, 194; *Irvine* v. *Campbell*, 6 Binn. 118.

An execution purchaser stands in place of the judgment creditor, and may insist on *his* rights, as well as on his own general rights as a *bona fide* purchaser, and will hold against all mere equitable claims. *Harper* v. *Williams*, 1 Dev. & Bat. Eq. 379.; Ib. 32, 35; *Wragg* v. *Comptroller*, 2 Dessaus. 509; *Gann* v.

*Chesley,* 5 Yerg. 205; *Roberts* v. *Rose,* 2 Humph. 147; *Bayley* ·v. *Greenleaf,* 7 Wheat. 146; *Kilpatrick* v. *Kilpatrick,* 1 Cushm. 126, 127; 4 Kent, (5th ed.) 154, a; *Moore* v. *Holcomb,* 3 Leigh, 597.

Where are the decisions to the contrary? There are cases which show that a court of equity will interpose and protect the equitable interest against the general lien of a judgment; but they have no application to the case of a *bona fide* purchaser, who has advanced his money on the faith of the execution sale, and the apparent non-existence of any encumbrance. The judgment creditor has no title, but a mere *lien;* but the execution purchaser has the legal title and equal equity; and in such cases, the invariable rule is, that the legal title, coupled with an equal equity, must prevail. Of this class of cases, bills, by equitable claimants to *enjoin* execution sales, are these cases which are generally, though carelessly, cited to show that a *bona fide* purchaser at execution sale, holds subject to all equities. 1 Paige, 125; 4 Ib. 14, 15; 7 Blackf. 249. It is plain they do not touch the question.

As to the policy of the matter, it is plainly in favor of the execution purchaser. Let it once be declared that sheriff's sales are made subject to all latent equities, and the interests of debtors are put to hazard. Bidders will know that they are engaged in a mere adventure of speculation, and will act accordingly. Instead of bidding with an eye to the value of estates, they will be governed by speculations upon the chance that secret equities exist, and the certain result will be, what our law seeks studiously to avoid—great sacrifices of property. Counsel cite a case from 12 Ala. 165, and aver that it is direct to the point. I have been unable to see the report; but if it be such a case, it is manifestly wrong.

*Robert Huntington,* on same side,
Filed an elaborate written agreement.

*J. A. P. Campbell,* for defendant in error.

The question presented for decision, and upon which this case turns, is, whether the assignment of the certificate of entry was inoperative as against the sheriff's vendee, because it was not re

corded in Attala county? An answer to this question is furnished by the decision of the Supreme Court of Alabama, in *Falkner* v. *Jones et al.,* 12 Ala. Rep. 165, made upon a state of facts very similar to this. It was there held, that the assignment of a certificate of entry is not within the registration law, and is not inoperative against the sheriff's vendee because of a failure to record it. The statute of Alabama, regulating transfers of land certificates, is precisely the same with the Mississippi statute; and the court too, in that case, fully recognized the principle settled by this court, in *Lindsay* v. *Henderson,* 27 Miss. 502, viz: "That this act vests the complete legal title in the party to whom it is issued, and his assigns, to all intents and purposes." Again, Huntington was not a purchaser directly from O. L. Nash, the assignor, and is not protected by the statute. When the statute speaks of "subsequent purchasers," it means purchasers directly from the grantor, (O. L. Nash,) and *not purchasers at execution sale,* (Huntington.) 24 Miss. Rep. 106. The Virginia statute, which makes unrecorded deeds void, as to subsequent purchasers, means purchasers from *him.* *Pierce* v. *Turner,* 5 Cranch, 154; *Tyler* v. *Hammond,* 11 Pick. 193; 6 B. Mon. 531. Huntington purchased at sheriff's sale, and was not protected by the statute.

It is impossible for the courts to hold, that registration of the certificate is necessary. The statute authorizing transfers, Hutch. Code, 858, does not require it, nor provide for it. There is no statute authorizing the recording of such an instrument, and the assignee could not have his certificate and assignment recorded, if he were to try. There is no good reason why there should be a record of certificates and assignments, other than the record made of it at the Land Office. No one can be misled, or need be misled by the want of registration in the county. Third persons can know of the entry only by reference to the books and records of the Land Office; and the same record which shows the entry, likewise gives information of the *assignment.* At any rate, whatever reason may be thought to exist, why a record of such instruments should be required, there is, as before said, no law authorizing or requiring it.

It may be a matter for the consideration of the legislature; but

the wholesome doctrine, *stare decisis*, will be adhered to by the court. Neither Huntington nor his vendee, (complainant,) can plead ignorance or *hardship*. They knew that a certificate of entry is assignable, so as to vest the complete legal title in the assignee, and that no statute requires, or provides for its record. Nash and his vendor were guilty of no *laches ;* they did nothing but what the law provides for; they proceeded in the regular usual course of business, and as soon as practicable, perfected their title by obtaining the patent; and it will be a hardship on the appellee to be deprived of his rights because of the blunders of his adversary; and it is respectfully submitted, that this court will affirm the decision of the court below.

HANDY, J., delivered the opinion of the court.

The material facts of this case appear to be that on the 29th of December, 1835, Orsamus L. Nash, entered the land in controversy at the United States Land Office, at Columbus, in this State, and in the year 1837, he made an assignment of the certificate at the Land Office, to Ezekiel Nash, and by written transfer and delivery of the original certificate, under his hand and seal, to Ezekiel Nash, who afterwards conveyed the land to Stephen E. Nash. The certificate and assignment were not registered in the Probate Clerk's Office of the county, where the land lies; and in March, 1838, a judgment was rendered against Orsamus L. Nash, upon a money demand, and under an execution issued thereon, the land was sold on the 17th December, 1840, and purchased by Huntington, who conveyed it to the complainant. The bill alleges that neither the parties interested in the judgment, nor Huntington, nor the complainant, had notice either actual or constructive, of the assignment of the certificate to Ezekiel Nash.

A patent from the United States for the land, was issued to Ezekiel Nash, on the 27th February, 1841, and an action of ejectment having been brought by Stephen E. Nash, to whom he conveyed the land, this bill was filed to enjoin proceedings in that action, and praying that Stephen E. Nash be decreed to convey the land to the complainant, and be enjoined from setting up any title to the land, founded on the deed to him from Ezekiel Nash.

The defendant demurred to this bill, which being sustained, the case is brought here.

It is insisted, on behalf of the plaintiff in error, that as the execution sale under which he claims title, was made before notice of the assignment of the certificate by Orsamus L. Nash, and without any registry of it, so as to give notice in law to a purchaser, the assignment must be considered as a secret equity, against which the plaintiff in error, in right of the purchaser under the execution, is entitled to protection as a *bona fide* purchaser. And this appears to be the equity on which the bill is based.

The statute, recognizing the right to make such certificates, plainly intended to give to the party in whose name it was issued, or to the *holder* of the certificate by assignment, a complete legal title to the land. *Lindsay* v. *Henderson*, 27 Miss. 502. This provision of law appears to have no reference to the registry acts; and, indeed, it appears to have been contemplated, that the formalities requisite in admitting deeds of conveyance to record should be dispensed with, and that the mere possession of the certificate by the original party, or by another person, who was the holder of it by assignment, should be sufficient evidence of legal title. And this view seems to be fully held by the Supreme Court of Alabama, upon a statute of that State in the same terms as our own. *Falkner* v. *Jones*, 12 Alabama, 159.

We have no statute admitting such assigned certificates to registration; and if such a document as that under consideration had been spread upon the registry books, it would not have been notice to a subsequent purchaser.

But what prejudice could arise to the purchaser at execution sale, from the want of registry of the assignment of the certificate? The certificate is not required to be registered among the land records of the county; and when the purchaser at sheriff's sale was about to purchase the land, he would be able to find nothing in these records touching the title. What then must he do? In order to claim protection as a *bona fide* purchaser, he would not be justified in acting upon the vague supposition that the land was the property of the defendant. He would be driven to the United States Land Office, in order to ascertain whether the defendant

.had any title or not. It is to be presumed that he used such diligence, and if he did, he there found that the land had been transferred to Ezekiel Nash. Either, therefore, he was guilty of *laches*, in not investigating whether the defendant in execution had any title to the land which he was about to purchase, at the only place where proper information upon the subject could be obtained, or, if he did make the examination he was thereby led to a notice of the assignment; because the bill admits that the assignment was made in that office.

It will not do for the purchaser to say that he had not notice of the assignment, or of any fact which would lead to a knowledge of it. For the rule is, that when a party cannot make out title but by a deed, which leads him to another fact, he shall be presumed to have notice of that fact. 2 Fonb. Eq. book 3, ch. 3, § 1, note (*b*). This principle applies as fully to this case, when the title could only be made out by reference to the Land Office books, where the entry was shown, and with it the assignment, as to a deed showing a fact material to the title about to be acquired.

Under this view of the case, the decree of the Court below is correct, and should be affirmed, and it is ordered accordingly.

A re-argument was applied for, but refused.