GEORGE W. MACRAE ET AL. *v.* JAMES M. GOODBAR ET AL.

1. REGISTRATION OF DEEDS. *Bond for title. Code* 1892, § 2459. *Assignment.*

   While a bond for title to land is recordable, under code 1892, § 2459, and its record is necessary to the protection of the obligee's interest in the land from the creditors of and innocent purchasers from the obligor, yet an assignment of the bond by the obligee to another is not required to be recorded.

2. SAME. *Attachment. Levy.*

   The levy of an attachment on lands to which the defendant held a bond for title after he had assigned the same to another; does not bind the land, although the creditor was without notice, actual or constructive, of the assignment.

FROM the chancery court of Quitman county.

HON. A. McC. KIMBROUGH, Chancellor.

Macrae and others, appellants and cross-appellees, were complainants in the court below; Goodbar and others, appellees and cross-appellants, were defendants there. The facts were these: On Dec. 8, 1890, one F. C. Sims, a merchant of Courtland, Panola county, Miss., sold his entire stock of merchandise and book accounts to Macrae and others, the appellants, and he also conveyed to them at the same time a tract of land, in section 13, in Quitman county, and assigned to them a bond for title which he held to another tract, in section 24, in said county. The bond for title was executed by W. T. and A. H. Jamison to Isbell & Deaton, who had assigned the same to Sims; and there was due a balance of over $700 to the Jamisons on the contract, evidenced by the bond, for the sale of the land in section 24. The deed from Sims to Macrae and others, appellants, for the land in section 13 was recorded in the record of deeds of Quitman county on Dec. 11,

1890, and the title bond, for lands in section 24, with its assignments endorsed thereon, was there recorded Dec. 15, 1890. Macrae and others, appellants, afterward paid the Jamisons in full for the land in section 24. On Dec. 10, 1890, Goodbar and others, appellees, who were joint creditors of Sims at the time of the sale to Macrae and others, appellants, sued out an attachment against Sims from the circuit court of Panola county, and a duplicate writ was issued to Quitman county and the lands (that in section 13 and also that in section 24) were levied upon thereunder as the property of Sims on the 10th day of December, 1890, before the record of the deed or the bond for title. Goodbar and others, appellees, plaintiffs in the attachment against Sims, succeeded in that suit; Sims' interest in the lands, both tracts, was condemned and shortly thereafter sold under process issued on the judgment in attachment and the same was purchased by Goodbar and others, appellees. This suit was instituted by Macrae and others, appellants, against Goodbar and others, appellees, the object of which was to confirm the complainants' title to the lands and to cancel the claims of the defendants thereto as clouds upon the title. The bill charged that Goodbar and others, appellees, had actual knowledge of the sale by Sims to complainants of the land in section 13, and the execution of the deed thereto, and of the assignment of the bond for title for the lands in section 24, before the suing out and the levy of the attachment. The defendants, Goodbar and others, denied such actual knowledge; they made their answer a cross-bill and sought the confirmation of their title to both tracts and the cancellation of complainants' claims as clouds, etc. The court below granted complainants the relief asked by them so far as concerned the lands in section 24 (the bond for title tract); but denied them relief as to the lands in section 13; as to these, the bond for title, lands, the prayer of the cross-bill was granted, and both parties appealed to the supreme court.

*St. John Waddell,* for appellants and cross appellees.

In regard to the lands in section 13, an attaching creditor only acquires by virtue of his attachment the interest that his debtor owns in the attached property at the time of the levy of the attachment.    Shinn on Attachments, sec. 318, p. 611.

Were it not then for the requirements of our registry laws, the defendants in this case could take nothing by virtue of their attachment, for the reason that at the time their attachment was levied, the attachment debtor, Sims, had already parted with all of his interest in the lands attached.

The registry law, sec. 1212, code of 1880, provides that if the defendants had notice or knowledge of the conveyances by Sims to complainants at or prior to the time of the levy of their attachment writ, then this did away with the necessity of recording those instruments so far as the defendants are concerned.

The main issue in the case is whether or not defendants had knowledge or notice of said deed by Sims before the levy of their attachment, or whether they had notice and knowledge of such facts and circumstances as would have put a reasonable man upon inquiry.

The preponderance of the proof in this case is, that Mr. Lowrey, the attorney of defendants, had knowledge prior to the suing out of the attachment writ, of the fact that Sims had conveyed the land in controversy to Macrae and others.    *Allen v. Poole,* 54 Miss., 323; *Kelly v. Mills,* 41 Miss., 282; *McLeod v. Bank,* 42 Miss., 112; *Buck v. Paine,* 50 Miss., 655; *Henderson v. Cameron,* 73 Miss., 848; *Woods v. Garnett,* 72 Miss., 84.

The chancellor's decree appealed from is against the great preponderance of the evidence on the point of actual notice.

The legal title of the land in section 24 is not in the controversy.    This controversy is entirely between two creditors of F. C. Sims, contending simply over his equity in the land.    To constitute one a purchaser for valuable consideration without

notice, in the meaning of the registry statutes, he must be a purchaser of the legal title or estate, and where the legal title is outstanding in a third party, and the contest is between persons simply over an equity in the land, he who first acquires that equity must prevail, under the well-known maxim of *"qui prior est tempore potior est jure."* 1 Story's Equity Jurisprudence, sec .64, p. 59; Bispham's Equity (4th ed.), 333; *Wailes* v. *Cooper,* 24 Miss., 208.

The mistake made in this case by appellees on the cross-appeal is in considering appellants as claimants of the property under an unrecorded or secret conveyance, from Sims, the common debtor.

*Calvin Perkins,* for appellees and cross appellants.

There is only one question involved so far as concerns the land in section 13, and that is a question of fact, namely, did P. H. Lowrey, appellee's attorney, at or before the levy of their attachment, have notice that Sims had conveyed the land to appellants? There is abundant testimony to show that he did not and the chancellor after a most careful consideration of all the evidence, decided, "that defendants did not have notice or knowledge of the conveyance of land involved in this case by Sims to complainants at the time they levied their attachment on the same, and did not have notice of such facts and circumstances as charged them with the duty of inquiring as to such transfers, before levying their said attachment."

The weight of the testimony is not to be determined by the number of witnesses, nor merely by the fact that the witnesses are interested or distinterested, but by their intelligence, their opportunity for knowing what transpired, to appreciate, understand and retain in the memory what happened, and for other things which will readily occur to the mind, such as the special training of the witnesses with relation to the subject matter about which they were testifying. The preponderance of the

testimony is overwhelming that the attachments were levied before any notice was received of the conveyance of his land by Sims.

As to the lands in section 24: Prior to the code of 1857 equitable interests in property, although liable to be subjected to the payment of the owner's debts by the proper proceeding in chancery, that is, upon a bill filed showing that judgment had been obtained against the debtor and execution issued thereon and returned *nulla bona* could not be taken under execution at law nor reached by any legal process whatever.

The act of 1822, which was the only statute on the subject until the code of 1857 went into effect, is as follows:

"*Trust Estate, How Subject to Debts of Beneficiary.*—Estates of every kind, holden or possessed in trust, shall be subject to like debts and charges of the person to whose use, or to whose benefit there were or shall be respectively holden or possessed, as they would have been subject to, if those persons had owned the like interest in the things holden or possessed, as they own, or shall own, in the uses or trusts thereof." Hutch. Code, sec. 29, p. 610.

The code of 1857 is substantially the same as the act of 1822 and has the following added thereto:

"Whether the trusts be fully executed or not; and may be sold under executions at law, so as to pass whatever interest the *cestui que* trust may have." Code of 1857, art. 12, p. 308.

The codes of 1871, 1880 and 1892 are merely copies of the code of 1857.

*Carpenter* v. *Bowen,* 42 Miss., 54, was this. Bill by mortgagee to enjoin sale of equity of redemption under a judgment junior to the mortgage. Motion to dissolve on bill and answer. Peyton, Judge, said: "The legislature of 1857 must be assumed to have known the construction which had been given to the statute of 1822, in relation to the sale of trust estates by which they were subjected to sale under executions at law when the trust was fully executed. With this knowledge they so changed

the law as to provide that 'estates of any kind holden or possessed for another shall be subject to the debts and charges of the *cestui que* trust, whether the trust be fully executed or not, and may be sold under executions at law so as to pass whatever interest the *ceslui que* trust may have.' This was certainly a very material and important change in the law upon this subject. The former statutes subjected the interest of the *cestui que* trust in the trust estate to sale under executions at law only in cases in which the trust had been fully executed. The present code is intended to supply what no doubt is supposed to be a defect in the law by subjecting the interest of the *ceslui que* trust in the trust estate to executions at law, as well as in cases in which the trusts had not been fully executed as those in which it had been; and to provide that the partial, as well as the entire beneficial interest of the *cestui que* trust, may be sold under executions at law."

*Adams* v. *Harris,* 47 Miss., 144, was this: Bill to remove cloud from title filed by a purchaser at execution sale. The defendant in execution held the land under a bond for title. The court said: "The judgment was a lien from the date of its rendition upon his interest in the land to the extent of his title. This is wrought by the statute which subjects equitable interests in lands to judgment. *Heard* v. *Baird,* 40 Miss., 794; *Carpenter* v. *Bowen,* 42 Ib., 54; *Walton* v. *Hargroves,* 42 Ib., 24; code of 1857, art. 12, p. 308, which provides that 'estates of any kind holden or possessed in trust for another shall be subject to the debts of the *cestui que* trust, whether such trusts be fully executed or not.' The cases cited go also to the point that the lien of a judgment and a sale under it bind and pass whatever interest the debtor had in the property."

The statutes and decisions above quoted establish beyond question that equitable interests are subject to be levied on under executions at law.

Are equitable interests within the meaning of the recording acts? The language of the statute (code 1880, sec. 1212; code

1892, sec. 2457) is "all bargains and sales and all other conveyances whatsoever." Our contention is, that the words "all other conveyances" embrace any writing sufficient in law to pass from one to another an interest in lands.

In claiming that appellees (cross-appellants) are protected by the recording acts, we do not have reference to the failure to have recorded the bond for title which the Jamisons executed to Isbell & Deaton, but to the failure to record the written instrument whereby Sims conveyed to appellants his equitable interest in the fee to the land. At the time of the execution of that instrument Sims was in equity the owner of the land, subject to Jamison's claim for unpaid purchase money. Sec. 1188, code of 1880; § 2434, code of 1892, required a "writing, signed and delivered" by Sims to pass his interest to appellants. Such writing was a "conveyance" within the meaning of § 1212, code 1880.

Argued orally by *St. John Waddell,* for appellants, and *Calvin Perkins,* for appellees.

CALHOON, J., delivered the opinion of the court:

Sims did not sell the land in section 24, to which he had a bond for title by assignment from Isbell & Deaton. He simply assigned this bond to Macrae and others, appellants, who thus became invested with only an equitable right, on the payment of the balance of the purchase price, to demand title from the Jamisons, who held the legal title. The statutes requiring registration of deeds, etc., for the protection of innocent purchasers and creditors do not apply in such case. Such laws must be strictly construed in favor of the holders of equities. They refer to legal titles, and not to such equities as are presented here. Bonds for title are recordable, and may be recorded, and, if not, the purchaser of the lands from, or judgment creditors of, the owner of the lands, without notice of the unrecorded bond, would acquire by the purchase, or execu-

tion sale, a title superior to it.   But no statute requires the record of an assignment of such an instrument.   As between the assignee of the assignee of the original holder of such bond, and the attaching creditor of his assignor, the levy on the lands cannot prevail.   Both having mere equities, the remote assignee, being prior in time, is prior in right.   The bond for title from the Jamisons to Isbell & Deaton was recorded, and this was enough to defeat purchasers from, and creditors of, the Jamisons, because of the record notice of the outstanding bond. Now, that record being there is enough to put any one desiring to buy or levy on the land on inquiry as to the ownership of that assignable bond.   In the case at bar Sims was the assignee of the bond from Isbell & Deaton, and Sims assigned and delivered it to Macrae and others, appellants, for value.   Goodbar and others, appellees, attached Sims, and levied their attachment on the land, which ripened into a judgment against Sims, who never was owner of the land, and set up their attachment lien as superior to the equity of appellants.   This will not do.   Note the difference between sections 2459, 2454 and 2457 of the code.   *Martin* v. *Nash,* 31 Miss., 324; *Oldham* v. *Ledbetter,* 1 How. 43, 26 Am. Dec., 690; *Huntington* v. *Allen,* 44 Miss., 654; *Byars' Garnishees* v. *Griffin,* 31 Miss., 603; *Wailes* v. *Cooper,* 24 Miss., 208; *Mississippi Val. Co.* v. *Chicago, Etc., R. R. Co.,* 58 Miss., 846.   Where the legislature designs that assignments be recorded, it distinctly says so, as in code, § 2461, as to trust deeds, mortgages and record liens.   As to the lands in section 13, we decline to disturb the conclusion of the chancellor on the facts.

*Affirmed on appeal and cross-appeal.*