## A. D. KELLY *v.* WM. MILLS.

1. VENDOR AND VENDEE : VENDOR'S LIEN AS AGAINST SUBSEQUENT PURCHASERS AND JUDGMENT CREDITORS.—The vendor's lien will not be retained against a bonâ fide mortgagee or grantee, nor against subsequent purchasers without notice, but will prevail against judgment creditors. 7 Wheat. 46 ; 4 Kent, 151 ; Story's Eq. 1217, 1227, 128, 1230.

2. JUDGMENT CREDITORS: BONA FIDE PURCHASERS.—Judgment creditors and purchasers at sheriff's sales, deriving rights by operation of law, are not purchasers for a valuable consideration, but, in contemplation of a court of equity, mere volunteers.

3. SAME : RIGHTS OF, AS AGAINST THE VENDEE OF THE DEBTOR HOLDING UNDER AN UNRECORDED DEED.—A judgment creditor of a vendor of land, after a sale to a third person for value, and before conveyance to the purchaser, will not be permitted in equity to subject the land so agreed to be conveyed to the judgment, though the judgment creditor may have had no notice of the sale. 4 Simons, 70 ; 4 Mylne & Craig, 408.

4. STATUTE OF FRAUDS : RESULTING TRUSTS : CONVEYANCE BY TRUSTEES :

REGISTRY ACT.—Trusts, arising or resulting by implication of law out of any conveyance of lands, are excepted from the operation of the statute of frauds and perjuries ; and the conveyance of a trustee, created such by implication of law, is not embraced within the spirit and object of the registry act, which declares all conveyances made by a debtor grantor, and not recorded as therein required, void as to creditors and subsequent purchasers.

5.  The case of *Kilpatrick* v. *Kilpatrick*, 23 Miss. 124, cited and overruled, so far as it holds that purchasers at sheriffs' sale are to be regarded as purchasers for value in equity.

Error to Chancery Court of Panola county. Hon. A. M. Clayton, chancellor.

*Walter & Scruggs, W. & J. R. Yerger*, for plaintiff in error.

Griffing was the holder of the legal title to the lands in controversy, being a trustee without any interest whatever. The claim of the defendants is based upon a judgment rendered by attachment against Griffing. The bill enjoined the sale of the lands under the judgment, and the legal title had been conveyed by Griffing to complainant anterior to the levy of the attachment. Griffing at no time had any interest in the property, and was only holder of the naked legal title. When the attachment was levied and the judgment, he had parted with the legal title, and had no estate, legal or equitable, in the property. Both legal and equitable estate was in complainant when the attachment was levied.

It has been repeatedly held by many courts, that a party who receives a note or bill of exchange in payment, or as collateral security, for an antecedent debt, is not a *bonâ fide* holder for valuable consideration, to be protected according to the principles of the law merchant. The defendant in this certainly does not occupy a more favorable position.

In *Dunlap* v. *Burnet*, 5 S. & M. 702, this court held that the vendor's lien would be enforced against a mortgage made by the vendee, if the mortgage was taken for an antecedent debt, the mortgagee not being a *bonâ fide* purchaser without notice.

So, too, this court has held in several cases that a party taking a deed of trust or mortgage to secure an antecedent debt, cannot protect himself as a *bonâ fide*, purchaser without notice,

where the grantor fraudulently made the conveyance, although the mortgagee or grantee was ignorant of the fraud. 2 S. & M. 469. *Pope* v. *Pope*, opinion, book 1, p. 487.

. A *bonâ fide* purchaser is one who, at the time of his purchase, advances a new consideration, surrenders some security, or does some act which, if his purchase were set aside, would leave him in a worse condition than his original one. *Boon* v. *Barnes*, 23 Miss. Rep. 136; also see *Pope* v. *Pope*. It has also been established, after full consideration, that a judgment creditor by *elegit*, is not entitled to be deemed a *bonâ fide* purchaser without notice, but he takes only such rights in the premises as the judgment debtor rightfully possessed. Thus, for example, a judgment creditor cannot hold an estate subject to an equitable mortgage by an *elegit*, executed on the estate of the debtor mortgagor, except subject to such equitable mortgage, although he had no notice of the mortgage at the time of the *elegit*. 2 Story Eq. § 150, 3 b.; *Whitforth* v. *Guagain*, 3 Hare's R. 416.

In the above case the court says: " The more I consider the case, the more satisfied I feel that I stated the general principle correctly in *Langton* v. *Horton*, when I said that a creditor might, under his judgment, take in execution all that belonged to his debtor, and nothing more. He stands in the place of his debtor. He only takes the property of his debtor subject to every liability under which the debtor himself held it." 3 Hare's R. 416. See also *Abbott* v. *Stratten*, 3 Jones and Lat. 603.

Again, in *Whitforth* v. *Guagain* the court says: " First. Take the case of an ordinary trust. It could not for a moment be contended that this court could not protect the interest of the *cestui que trust* against the judgment creditor of the trustee. The judgment of Lord Cottenham in *Newlands* v. *Paynter*, 4 Myl. & Cr. 408, is decisive upon that point, and the other cases cited at the bar prove the same thing. Secondly. Take the case of a purchaser for value before conveyance. *Lodge* v. *Lysley*, 4 Sim. 70, is an authority, if authority could be wanting, to show that the equitable interest of such a party will be preferred in equity to the claim of the judgment creditor." 3 Hare's R. 416.

A purchaser at execution sale, or at a sale of a bankrupt's effects, only acquires the title or interest of the debtor. 5 S. & M. 710 ; 11 S. & M. 21 ; 7 S. & M. 586 ; 7 S. & M. 513.

If Griffing had mortgaged this property, or conveyed it in trust to secure an antecedent debt, the party receiving such a conveyance could not claim protection, as a *bonâ fide* purchaser without notice, against the claim of complainant. The cases already cited show this. They proceed upon the idea that such a party has advanced nothing upon the faith of such a conveyance ; the credit given by him was antecedent to the conveyance, and he cannot, therefore, claim the benefit of a rule established to protect parties who ignorantly and in good faith made an advance of money upon the security of the property then conveyed, and which security was the inducement to make the loan. If a party thus becoming possessed of the legal title, in payment of an antecedent or as a security for it, will not be protected against the rights of the *cestui que trust*, or outstanding equities ; *a fortiori*, a party who has only levied his attachment, whereby he does not become possessed of the legal title, cannot claim such protection.

The injunction in this case enjoined the sale under the judgment ; the deed from Griffing was recorded before the judgment was rendered ; the defendant has not become possessed of the legal title, either by a conveyance from Griffing or by a sale under the judgment. Under these circumstances, equity must certainly protect the title of complainant, who has become possessed of the legal title, and whose equity is much greater than any the defendant can claim or assert. It is an attempt by defendant to secure an antecedent debt, and to do so, he asks to subject property which in equity never belonged to Griffing, against the claim of the party to whom in equity it does belong, and who now, by the conveyance of Griffing, is possessed of both the legal and equitable estate.

If Griffing, to secure Mills in his antecedent debt, had mortgaged their property to him, a court of equity would have converted Mills into a trustee, and declared him to hold the legal title for the benefit of those entitled in equity. And the

rule is even stronger against him in the present case, where he has not possessed himself of the legal title. A judgment creditor, proceeding *in invitum*, does not, in the view of a court of equity, stand in that position in which he requires or receives the same favor as a purchaser whose right is enforced through the conscience of the other party. 2 Story's Eq. 1502; *Langton* v. *Horton*, 1 Hare's R. 547, 563; *Coleman* v. *Britain*, 2 B. & Ald. 93; *Skeeles* v. *Shearly*, 8 Sim. R. 153, S. C.; 3 Mylne & Cr. 112.

Even had a sale been made in this case, and the property purchased by a third party, under the execution in favor of Mills, such party would have been protected. A purchaser at such a sale would have bought with full knowledge of the rule of law, that a " creditor under his judgment could take in execution all that belonged to his debtor, and nothing more." The rule of *caveat emptor* is of universal application to execution sales. The sheriff only sells the debtor's property in the thing, whatever it may be. 2 Bailey's S. C. R. 480; *Freeman* v. *Caldwell*, 10 Watts' R. 9; *England* v. *Clark*, 4 Scammon R. 486.

*John W. C. Watson*, for defendant in error, contended—

From complainant's own showing, it appears that Griffing was clothed with the legal title to the said lands as early as the year 1856; the patent of the State was then issued to Griffing for said lands, conveying to him the legal title thereto, of which fact evidence was filed in the clerk's office of the Probate Court of Panola county.

From 1856 until the 10th July, 1860, the said Griffing was held out to the world as the owner in fee-simple of said lands.

During this period of time defendant gave credit to said Griffing, and on his debt so contracted he issued an attachment in February, 1860, which was levied on said lands; and in May, 1860, judgment was rendered on said attachment, and said lands condemned to be sold in satisfaction of said judgment.

After all this, complainant for the first time sets up title to

said lands based upon a state of facts wholly unknown to defendant, and which is not countenanced by law.

The trust which arises in favor of a party paying the purchase-money for lands, the legal title of which is conveyed to another, cannot be set up as against a purchaser from, or judgment creditor of, the party so clothed with the legal title. *Kilpatrick* v. *Kilpatrick*, 23 Miss. 124; *Bayley* v. *Greenleaf*, 7 Wheaton, 46.

The deed from Griffing to Kelly was clearly void as to defendant when he recovered his judgment, it not having been recorded, and defendant having no notice whatever of its existence. *Harper* v. *Tapley*, 35 Miss. R. 506; *Henderson* v. *Downing*, 24 Miss. R. 106; R. Code, page 310, art. 21.

This unrecorded deed having been void as to all judgment creditors of Griffing, and to purchasers from him for a valuable consideration and without notice, this case must now stand as though Thompson and Ford were themselves asking relief against defendant's judgment.

And upon what grounds could these parties now be heard by a court of equity as against a *bonâ fide* judgment creditor of Griffing; they held out Griffing to the world as a man of large property, and in this way they gave him credit, and now they ask to be protected as against the credit thus given by themselves to him. To do this would give countenance to laches and fraud.

Moreover, as against *bonâ fide* purchasers and judgment creditors without notice, equity like that which Thompson and Ford had in the lands, will not be upheld by courts. It would be against the policy of the law, which declares that titles to lands must be evidenced by deed or writing duly executed and recorded; this being done, the law gives the owner protection.

When defendant gave credit to Griffing, so far as anything appears in this case, he was the owner in fee-simple of the lands in question; this continued to be the case until judgment and execution had been had on this credit so given. But now a third party comes forward and asserts that in the case of Griffing appearances were deceitful, and that forsooth he all the time

had owned what the records of the State at the city of Jackson and in the county of Panola established that Griffing owned. Defendant is an innocent person, standing in this court on his legal rights, and he asks that they be upheld.

HARRIS, J., delivered the opinion of the court.

The complainant, A. D. Kelly, filed his bill in the Chancery Court of Panola county, stating in substance the following facts: Thompson & Ford, in the year 1856, entered into partnership for the location and purchase of a large body of lands in this State; among other lands, they purchased with their own money the lands in dispute, and caused patents to be issued therefor to their agent and trustee, J. C. Griffing, to be held by him for their sole use and convenience, though it is not so expressed in the patents. The said patents were not recorded in Panola county.

The bill charges that in the month of July, 1857, complainant purchased of Thompson & Ford, for a valuable consideration, certain large bodies of land in the State of Mississippi, and among them the land in dispute, and that the said Griffing executed a deed for said lands to complainant, in the year 1857, which was recorded on the 10th of August, 1860, and complainant has held possession of them as far as he could hold possession of wild lands, and has paid taxes on them ever since his purchase. That said Griffing, since the execution of said deed to complainant, has never claimed any right, title, or interest in said land, either by paying taxes or otherwise.

That on the second day of February, 1860, the said defendant Mills sued out an attachment against the said Griffing, returnable to the Circuit Court of Panola county, for an indebtedness alleged to be due from said Griffing to said Mills, which attachment was levied upon the lands in controversy. That Griffing failing to appear to defend said attachment, a judgment was entered by default, on the 17th May, 1860, for $2,579.15, and a *venditioni exponas* was issued thereon, and that defendant Jones, as sheriff of Panola county, has advertised said land for sale, under said writ, as the property of said Griffing, and unless re-

strained, will proceed to sell the said land, under said *venditioni exponas.* The bill prays for an injunction and for subpœnas, and on final hearing for a perpetual injunction, etc.

To this bill there was a demurrer for two causes: 1st. Because the legal title to the lands, as the bill mentioned, was, at the time of the levy of this attachment, and at the time of the rendition of judgment thereon, in the name of defendant in attachment; and the deed from him to complainant was not recorded until afterwards.

2d. Because respondent Mills was a judgment creditor, by attachment, with its lien, before he had notice of complainant's alleged title.

The chancellor sustained this demurrer, dissolved the injunction which had been granted, and dismissed complainant's bill, and the cause is brought to this court upon an agreed case by writ of error.

The only ground upon which the claim of the defendant in error to subject the land in controversy to the payment of his judgment is rested, is, that he occupies the position of a *bonâ fide* purchaser without notice, and that as to him the deed from Griffing to complainant is void for want of registration, and for this the case of *Kilpatrick* v. *Kilpatrick et al.*, 23 Miss., p. 124, and the case of *Bayley* v. *Greenleaf*, 7 Wheat. R., p. 46, are cited.

The case of *Kilpatrick* v. *Kilpatrick et al.*, decided by this court, Chief-Justice Sharkey delivering the opinion, at the January term, 1851, cannot be regarded as decisive of this question : first, because it expressly waives the point now under consideration, and rests the opinion of the court upon the ground that the equitable lien of the vendor in that case must be confined to the amount of the purchase-money expressed in his deed, which was but fifty dollars—instead of five thousand dollars, as claimed by the bill—and that parol proof was inadmissible to vary the consideration expressed in the deed ; and second, because the loose *dicta*, favoring the position that judgment creditors and purchasers at sheriffs' sales stand upon the same footing as *bonâ fide* purchasers for value, without notice, are not supported even by the author-

ities referred to, and are evidently founded on a misapprehension of that doctrine as stated in the authorities cited.

Chief-Justice Sharkey, in delivering the opinion of the court, after admitting that "the purchaser at sheriff's sale takes the estate subject to all equities which existed as against the owner," says, while this general proposition is true, "at the same time it is also true that a purchaser at sheriff's sale, in many respects, stands upon the same footing with other purchasers; and all the authorities agree that the vendor's lien cannot be enforced against a bonâ fide purchaser without notice," citing 2 Story's Eq. Jur., § 1217, 1230; 4 Kent, 151, 5th ed. He says: "The case of a purchaser at sheriff's sale is not mentioned by these distinguished authors, though they hold that the lien would prevail against a judgment creditor who recovered judgment after the conveyance, as well after as before he received a conveyance of the land under his judgment. Now, if we assume that a third person, who has purchased at sheriff's sale, occupies precisely the place of the judgment creditor, this rule might apply to him; but this is not always true. But this doctrine was controverted by Chief-Justice Marshall in the case of Bayley v. Greenleaf, 7 Wheaton, p. 46. And after a very thorough investigation, it was then decided that the lien could not prevail against judgment creditors, and this opinion was approved by Chancellor Kent in a note to the 4th vol. of his Commentaries, p. 154 (note a), in opposition to a distinction taken in some adjudged cases, that a lien would prevail against an assignee or creditor for a past consideration, though not against such assignee on a new consideration."

It is a great mistake to suppose that C. J. Marshall, in Bayley v. Greenleaf, "decided that the (vendor's) lien (in equity) could not prevail against judgment creditors,"—and it was a still greater error to say that this opinion was approved by Chancellor Kent. On the contrary, C. J. Marshall held only that such lien could not be asserted against creditors (by mortgage) holding under a bonâ fide conveyance, without notice from the vendee. That when the vendee by actual conveyance passed the legal estate to the creditor, he thereby became a pur-

chaser; and this was the case of a creditor who held the legal estate by a mortgage executed by the vendee. Judge Marshall expressly places his decision on that ground. Counsel for the appellees.—The creditors placed their case on that ground. Mr. Jones, for the creditors, contended that "under the circumstances of the present case, the lien could not be asserted against creditors taking a *bonâ fide* conveyance *from the vendee.* This is not a case where a party comes in *by operation of law.* A creditor who *takes a conveyance* for the security of his debt, stands in equal equity with one who pays his money, and is equally a purchaser."

And so this opinion was understood by Mr. Wheaton, the reporter.—"Quære, whether the lien can be asserted against the assignees of a bankrupt, or other creditors, coming in under the purchaser, *by act of law.*"

And so Chancellor Kent understood the decision of Judge Marshall in *Bayley* v. *Greenleaf.* In the 4th vol. of his Commentaries, 7th ed., p. 157, he says of this case: "It has also been decided by the Supreme Court of the United States, after a full examination of the question, and upon grounds that will probably command general assent, that the vendor's lien cannot be retained against creditors *holding under* a *bonâ fide mortgage or conveyance from the vendee;* nor against a subsequent purchaser without notice. The lien *will* prevail, however, against a judgment creditor of the vendor, intervening between the time of the agreement to convey and receipt of the consideration-money, and the actual conveyance. Under these circumstances, the vendor is justly considered in the light of a trustee for the purchaser. But in that case, an intervening mortgagee or purchaser for a valuable consideration, and without notice, would be preferred."

In a note to this paragraph, after citing the case *Bayley* v. *Greenleaf,* and several authorities "to the same point," Chancellor Kent cites other authorities "decidedly condemning" it, and says: "But those cases only go to establish the position, that the assignees of bankrupts and insolvents take the estate subject to the existing equities against the vendee, and they are in

no better condition than the bankrupt, for they come as by operation of law, and without paying value. That point was, however, *not decided by the Supreme Court.* The court took a distinction between an assignment by a bankrupt, under the direction of a bankrupt or insolvent act, and an absolute conveyance by the vendee to *bonâ fide* creditors *or purchasers.*"

It is clear, therefore, that neither Chief-Justice Marshall nor Chancellor Kent have given the least countenance to the idea that purchasers at sheriff's sale are to be regarded as purchasers for value, in equity.

Judge Story, in his work on Equity Jurisprudence, §§ 1228 and 1229, so understands the doctrine, and cites the case of *Bayley* v. *Greenleaf* as illustrating it. He says that the lien of the vendor exists against the vendee, and against *volunteers* and purchasers under him, with notice, or having an equitable title only; that it will prevail against assignees claiming by general assignment under bankrupt and insolvent laws; against assignees claiming under a general assignment, made by a failing debtor for the benefit of creditors; and against judgment creditors of the vendee, whether before or after a conveyance under the judgment has been made to them; for each party, as a creditor, would have a lien on the estate sold, with an equal equity, and in that case the maxim applies: *Qui prior est in tempore fortior est in jure.* He says there is a clear distinction between an assignment to assignees for the benefit of creditors *generally*, and a particular assignment to specified creditors for their particular security or satisfaction; that the former are deemed to take *as mere volunteers*, and not as *purchasers for valuable consideration*, strictly so called; while the latter, if a conveyance of the property has been actually made, and they have no notice of the purchase-money being unpaid to the vendor, are deemed entitled to the same equities as any other *bonâ fide particular* purchaser.

In his work on Equity Pleading, Judge Story says that " a creditor by judgment, *in invitum*, does not, in the view of a court of equity, stand in a situation which either requires or entitles him to the same favor as a purchaser for a valuable con-

sideration, whose rights are enforced through the conscience of the other party." In his work on Equity Jurisprudence, § 1,502, he states the same position; and in § 1,503 (b) he says: "The question sometimes arises as to who is to be treated as a *bonâ fide* purchaser in the sense of the rule; and it has been held that a judgment creditor by *elegit* is not entitled to be deemed such, but he takes only such rights in the premises as the judgment debtor rightfully possessed. Thus, for example, a judgment creditor cannot hold an estate subject to an equitable mortgage, by an *elegit* executed on the estate of the debtor mortgagor, except subject to such equitable mortgage, although he had no notice of the mortgage at the time of the *elegit.*" And for these positions he constantly cites the case of *Whitforth* v. *Guagain*, 3d Hare's R. 416 (25th Eng. Ch. R.), and *Langton* v. *Horton*, 1 Hare's R. p. 549 (23d Eng. Ch. R.), with approbation.

The principle of these cases is, that a creditor under his judgment may take in execution all that belonged to the debtor, and nothing more. He stands in the place of his debtor; he only takes the property of his debtor, subject to every liability under which the debtor himself held it. But that he cannot take in execution and hold, in a court of equity, the equitable interests of the *cestui que trust* under an execution against the trustee, holding the legal title, as held by Lord Cottenham in the case of *Newlands* v. *Paynter*, 4th Mylne & Craig, p. 408 (18th Eng. Ch. R.). Nor can a judgment creditor of a vendor, after a sale to a third person for value, and before conveyance to the purchaser, notwithstanding he had no notice of such sale, be permitted in equity to subject the land so agreed to be conveyed to his judgment, citing *Lodge* v. *Lyseby*, 4 Simons, p. 70 (6th Eng. Ch. R.).

It is further held in these cases, that the judgment creditor of a trustee, without notice of the trust, is not a *purchaser for value* in the contemplation of a court of equity.

The vice-chancellor, in the case of *Whitforth* v. *Guagain*, decided in 1844, says the most plausible way of stating the case in favor of the judgment creditor, is by supposing his right

to be founded in *contract*, and not to be the result of a proceeding *in invitum*, as may be the case of a judgment by confession. Even this, however, would not alter the case; for the contract in such case is a general contract for a judgment and the fruits of a judgment. If a party contracts specifically for a given property, pays the purchase-money, and obtains *a legal title* without notice, up to the time of obtaining the conveyance as well as of paying the money, *that* may give him a right to be preferred to an equitable claim, which is prior in point of time. But there is no principle upon which a court of justice can be required to imply that a general contract to give a judgment, is a contract to give that which does not belong to the debtor. In the one case, the purchaser contracts for a specific thing, and obtains a legal title; in the other, he merely takes a judgment that gives him nothing more than a right to that which belongs to his debtor.

Judge Story, in note (1) to § 410, 1st vol. of his Commentaries on Equity Jurisprudence (6th ed.), so far as his opinion may be regarded as authoritative, puts the question at rest, and upon the reasoning just stated. He says, the rule in equity in favor of *bonâ fide* purchasers without notice, not to grant any relief against them, is founded on a general principle of public policy, citing *Walwyn* v. *Lee*, 9th Ves. R. 24. It is not, however, absolutely universal, for it has been broken in upon in two classes of cases. In the first place,' *it is not allowed* in favor of a judgment creditor who has no notice of the plaintiff's equity. This appears to proceed upon the principle that such judgment creditor shall be deemed entitled merely to the same rights as the debtor had, as he comes in under him and not through him, and upon no new consideration like a purchaser; citing *Burgh* v. *Burgh*, Rep. temp. Finch, 28. In the second place, it is not allowed in favor of a *bonâ fide* purchaser without notice against the claims of a dowress as such, because hers is a legal title, etc. The same exceptions are repeated by Judge Story in the same vol., § 436.

The same distinction as to judgment creditors is recognized in numerous cases. See *Mackreth* v. *Simmons*, 15th Ves., p.

353–4; *Finch et al.* v. *The Earl of Winchelsea*, 1 Pr. Wm. R. 278; *Skeeles* v. *Shearly*, 3d Mylne & Craig, p. 112 (14 Eng. Ch. R.); *Newlands* v. *Paynter*, 10 Simons, 378 (16 Eng. Ch. R.); *Dudley* v. *Cole*, 1 Devx. & Bat. Eq. R. 436; *Freeman* v. *Hill*, Id. 389; *Rutherford* v. *Green*, 2 Ired. Eq. R. 127. And the same rule is distinctly stated, and the same authorities cited and relied on by this court, in the case of *Money* v. *Dorsey et al.*, 7 S. & M. p. 22.

Judge Clayton, delivering the opinion of the whole court, at the January term, 1846, says: The doctrine is well established, that from the time of a sale of land, the vendor becomes a trustee of the title for the vendee, as the latter is a trustee of the purchase-money for the former. In each instance, a lien is created upon the estate for the money. This lien will prevail against a judgment creditor of the vendor, intervening between the time of the agreement to convey and receipt of the purchase-money and the actual conveyance. The lien of the judgment could only operate upon the interest that Pierce (the defendant in execution) had at the time of its rendition; the judgment creditor takes the place of the judgment debtor. He can occupy no higher ground unless in cases of fraud.

It is therefore undeniable, both upon principle as well as authority, that a purchaser at sheriff's sale, like every other assignee by act and operation of law, only takes the interest of the debtor, whatever it may be, and in the state it is in, subject to all equitable as well as legal demands of third persons. 2 Iredell's Eq. R., p. 127, *Rutherford* v. *Green.* And that neither judgment creditors nor purchasers at sheriff's sale, deriving rights by operation of law, are to be regarded as purchasers for a valuable consideration, but they are *mere volunteers* in contemplation of a court of equity.

This, then, being the case of a resulting trust, where Griffing, the debtor, was merely the holder of the legal title for Ford & Thompson, from whom complainant purchased, Griffing is to be regarded in equity as the agent, and Ford & Thompson as the *real grantors* to the complainant. Griffing, in his own right, had nothing to convey—nothing upon which appellee's attachment

could be levied. Ford & Thompson, being the real owners, and having made the sale and received the purchase-money, are to be regarded as the real vendors and grantors. It is next insisted by counsel for the appellee, that the deed from Griffing, the defendant in attachment, to Kelly, the complainant and appellant here, was void as to Mills, the plaintiff in attachment, when he recovered his judgment, it not having been recorded, and Mills having no notice of its existence, by virtue of the 21st article of the 4th section, chapter 36 of the Revised Code, p. 310; and on this point we are referred to the cases of *Harper* v. *Tapley*, 35 Miss. R., p. 506, and *Henderson* v. *Downing*, 24 Miss. R., p. 106.

It is held in these cases, that under the registry act above cited, a purchaser at sheriff's sale occupies the position of the judgment creditor; and hence if, *at the time of the rendition of the judgment* (when its lien attached), the *creditor* had no notice of the prior conveyance of his debtor's property, the purchaser at sheriff's sale, under the judgment, will not be affected by such conveyance, notwithstanding such notice, after the lien of the judgment had attached.

The principle of these cases is that a judgment creditor, under this registry act, has the right to appropriate *the land of his debtor* to satisfy his judgment, in preference to the grantee of an unrecorded deed, of which he had notice prior to the rendition of his judgment. And that a purchaser at sheriff's sale acquires all the rights of such creditor in this respect, as well as the title and right of the debtor to the land so purchased, whatever that may be, which is subject to execution at law.

The authority of these cases is fully recognized, as well as the operative force of the registry act, to make void all conveyances of *his property*, by a debtor grantor, as against all creditors and subsequent purchasers for valuable consideration without notice, unless such conveyance shall be duly proved or acknowledged, and lodged for record as required by the act. But the decisions in these cases do not extend to the case before us.

First, because this is the case of a resulting trust, which is

expressly excepted from the operation of our Statute of Frauds and Perjuries, and is not required to be recorded; and second, because a resulting trust, or mere naked legal title, without any beneficial interest in the debtor grantor, is not embraced either by the spirit and object, or the terms of our registry laws, and a court of equity will not, therefore, hold him to be a *beneficial* owner (or grantor) for any purpose. On the first point, our Statute of Frauds and Perjuries, R. Code, p. 359, art. 5, after declaring that all trusts of lands or slaves shall be by deed or will in writing, or else they shall be void, and providing that all deeds creating a trust shall be proved or acknowledged as other deeds and lodged with the clerk of the Probate Court of the proper county to be recorded, and shall only take effect from the time they are so lodged for record, contains this *proviso:* That when any trust shall arise, or result by implication of law, out of conveyance of lands or tenements, or slaves, then such trust or confidence shall be of the like force and effect as the same would have been if this act had not been passed.

It is therefore clear that in court of equity the defendant in attachment being a mere agent and trustee, having no right or beneficial interest in the property in dispute, the whole purchase-money having been paid by Ford & Thompson, this trust resulting by implication of law, is neither required to be in writing nor recorded.

On the second ground, that the registry act does not embrace conveyances by trustees, created such by implication of law, but only has reference to grantors having a beneficial interest, which is the subject of sale or conveyance, we think it manifest, both from the spirit and object, as well as the terms of that act.

The object of the act in question was to protect creditors and subsequent purchasers against secret conveyances *of their own property* by debtors, whereby their creditors, or purchasers from them, would be deprived of the benefits of their judgments and conveyances; but it was never intended to injure the rights of third persons who claim to derive nothing from. such debtors, and to take nothing from his creditors, who only

assert that what never was the debtor's, cannot in equity belong to his creditors.

Lord Mansfield, in the case of *Cadogan* v. *Kennett*, Cowper, 434, speaking of the statute of 13th Eliz. ch. 5, which relates to frauds and perjuries, says that such a construction is not to be given in support of creditors as will make third persons sufferers. And the rule is of familiar application, that courts will not allow statutes designed for the prevention of fraud, to be converted into instruments of fraud and injustice.

The words of the act are, that deeds, etc., "shall be void as to all creditors and subsequent purchasers for valuable consideration, without notice," etc. In the case of *Pierce* v. *Turner*, 5 Cranch R., p. 164, the Supreme Court of the United States, in construing the Virginia Registry Act, of which ours is a substantial copy, say that these words in the statute are to be limited to the creditors of, and subsequent purchasers from, the grantor. That the title of creditors being derivative, if the debtor had no title, then his creditors could have none. In the case of *Laud* v. *Jeffries*, 5 Randolph R., p. 211, on the construction of the same statute, the Supreme Court of Virginia adopt this construction, as well as the reasoning of the Supreme Court of the United States.

If, then, Ford & Thompson are to be regarded as the real vendors and owners in this case, of the property in dispute, at the time they sold it to complainant and received the purchase-money from him and Griffing (appellee's debtor), as a mere agent and trustee, without any real right or interest in the property, only for the use and convenience of Ford & Thompson, it follows that in a court of equity Ford & Thompson must be regarded as the vendor's grantors, and Griffing a mere conduit of the legal title; and in this view a court of equity must hold that, so far as this land is concerned, Mills, the plaintiff in attachment, is not a creditor of, or purchaser from, the *grantor* of the land he seeks to sell, and not, therefore, within the provisions of the act.

It is insisted by counsel for the appellee that this case must now stand as though Ford & Thompson were themselves

asking relief against Mills' judgment; and it is urged that in that case, upon general principles, a court of equity would refuse such relief.

We have already shown that, so far as Ford & Thompson are concerned, this is a case of *resulting trust*, expressly excepted out of the Statute of Frauds and Perjuries, and not required to be recorded by that act; and hence it is clear that the title of Ford & Thompson could not be affected by any creditor of Griffing claiming to subject *their property* to *his debt*. They are in default, and the maxim applicable to all judicial sales is, *caveat emptor*.

Let the decree be reversed, demurrer overruled, and cause remanded for further proceedings, in accordance with this opinion, with leave to the appellee to answer within sixty days from this date.