MISSISSIPPI VALLEY COMPANY *v.* CHICAGO, ST. LOUIS, AND NEW ORLEANS RAILROAD COMPANY.

1. CORPORATION. *Consolidation of railroad companies. Effect on debts and liabilities. Notice.*

Where, by the consolidation of two railroad companies, another is created, which, by the terms of consolidation, acquires all of the property and franchises, and assumes all of the debts and liabilities of the two of which it is formed, and which become extinct by its creation, it takes such property subject to the debts of the original companies, and burdened with all liens upon it which were valid against those companies, and will not be permitted to aver ignorance of an unrecorded mortgage previously executed by one of the original companies.

2. LIEN. *Of judgment. Of unrecorded mortgage. Notice.*

Under the registry law of this State, a judgment lien on land previously conveyed by an unrecorded mortgage of the debtor, of which the judgment creditor had no actual notice, and nothing to put him upon inquiry before the recovery of his judgment, is superior to the title of the mortgage.

3. PURCHASE. *At execution-sale at common law. Title acquired.*

A common law, the purchaser of land at an execution-sale acquired only the interest of the defendant in execution, and was liable to be defeated by any secret, legal, or equitable right which was superior to and available against the title of the defendant. And this rule of the common law is still in force, except where the registry laws otherwise provide.

4. Same.   *Unrecorded conveyance.   Judgment lien.   Registry law.*

An unrecorded conveyance of such a beneficial interest in land as may be subjected to execution is void, under our registry law, as against a subsequent judgment-creditor, without actual notice or anything to put him upon inquiry before the recovery of his judgment. But where the conveyance is of a naked legal title, or an equity arising by operation of law, the statute in relation to registration has no application, and the judgment-creditor remains, as at common law, a mere volunteer.

5. Registry Law.   *Code of 1871.   What purchasers and creditors protected.*

The provision of the registry law in the Code of 1871 to the effect that "every conveyance, covenant, agreement, deed, mortgage, and trust-deed" concerning land must be recorded in order to be valid and effectual against "subsequent purchasers and all creditors," has reference solely to the purchasers from and creditors of the grantor, covenantor, or party making the agreement, and protects only such purchasers and creditors against an unrecorded instrument of the character mentioned. And subsequent purchasers remote from the grantor of an unrecorded conveyance of land, and the creditors of a grantee of such grantor, are left, as at common law, unaffected by the statutory provision referred to; the former being protected by their good faith, or that of the vendor, where it exists, and the latter being regarded as mere volunteers.

Appeal from the Circuit Court of Copiah County.

Hon. S. S. Calhoon, Judge.

The Mississippi Valley Company brought this action of ejectment against the Chicago, St. Louis, and New Orleans Railroad Company. A judgment was rendered for the defendant, and the plaintiff appealed. The facts of the case are sufficiently stated in the opinion of the court.

*Craft & Cooper*, for the appellant.

The record does not show notice to the new corporation of the unregistered mortgage before the consolidation. If the new corporation took the land in controversy without notice, it could have held the same against the unregistered mortgage; and appellant's title as a purchaser under a judgment against the new corporation must prevail over the unrecorded mortgage. If the new corporation could have held as against the unregistered mortgage, a purchaser under a judgment against it can also hold against such mortgage, whether the purchaser had notice or not. Title once vested in a *bona fide* purchaser

for value can never be affected by subsequent record or notice. 16 Mass. 406 ; 2 Pick. 184; Wade on Notice, 241.

But whether the new corporation had notice or not, and whether it could have held the land against the mortgage or not, we insist that under a proper construction of the registration law, the creditor, if he had no notice, will prevail over the mortgage. A judgment creditor may not be a *bona fide* purchaser, — may be a volunteer, in equity and on all other grounds, — but as against unrecorded deeds, and where only the effect of non-registration is involved, his position and rights are those of a *bona fide* purchaser. If the debtor once had a beneficial ownership of land conveyed by an unregistered mortgage, a creditor's claim will prevail over such mortgage, of which he had no notice. *Henderson* v. *Downing*, 24 Miss. 106. A *bona fide* purchaser without notice, for value, from one who has previously made a conveyance not registered, acquires a good title against such unregistered conveyance. This title the purchaser can convey to a third person, who would hold against the unregistered conveyance even with full notice. Why, on principle, cannot a creditor of such *bona fide* purchaser subject the land, if a purchaser from him can hold it? But it is not pretended that the purchaser under the judgment against the new corporation, in this case, had notice ; and if, under the registration law, the creditor occupies the position of a *bona fide* purchaser, our title must prevail. 6 Ill. 214 ; 40 Ill. 163 ; Rorer on Jud. Sales, sects. 1033, 1040 ; 2 White & Tudor Ld. Cas. 89 ; 1 Metc. 212 ; 4 Pick. 252. In Tennessee (Mart. & Y. 385) it has been held that the position of creditor is better than that of a purchaser, but we only insist that it is as good. This equal position was not denied by this court in 1 Smed. & M. 70. See also *Duke* v. *Clark, ante,* p. 465.

The receiver of the Federal court was never in actual possession of this land, did not include it in his claim by inventory, and was not specifically authorized to take possession

of it.   If he had any possession it was as a trespasser, and not that of the law.   111 Mass. 508.

*L. B. Harris*, on the same side, cited the following authorities : —

1. As to the effect of the consolidation of the railroad companies : 42 Mo. 63 ; 31 Ind. 283 ; 52 N. Y. 363 ; 3 Washb. on Real Prop. 325 ; 28 Conn. 289.

2. As to the possession by the receiver : High on Rec., sects. 171, 302, 349, 424, 440, 599 ; 19 N. Y. 369.

3. On the title acquired by appellant under the judgment against the consolidated company : Jones on Mort., sects. 572–576, 1462, and authorities there cited.

*W. P. Harris*, for the appellee.

The mortgage was that of the Mississippi Central Railroad Company, an extinct corporation.   By the act of consolidation with the New Orleans, Jackson, and Great Northern Railroad Company the two old companies became extinct, and a new company, distinct from both, was created, and began an independent career.   95 U. S. 319 ; 96 U. S. 499 ; 98 U. S. 359.   This new company (the New Orleans, St. Louis, and Chicago Railroad Company) assumed the debts of the old company, and took their property burdened with all their debts, secured and unsecured.   *The Key City, etc.*, 14 Wall. 653.

The new company, in its operations and career as a corporation, incurred the liability on which the judgment was based under which the plaintiff in ejectment claims.

It is not to be disputed that the new company took the property as a volunteer, and besides, by the very nature of the act of consolidation, with full notice of the mortgage.   14 Wall. 563.   The judgment against it, therefore, bound only the right it had acquired to the property, charged with the equity of the mortgageor company, and the purchaser at the execution-sale bought subject to this equity.   *Walton v. Hargroves*, 42 Miss. 19.   Again, the judgment creditor was not a creditor of the mortgageor company, and was not, therefore,

protected by the registry law.   Creditors of the grantor who made the prior unregistered conveyance are the class of creditors protected, and not the creditors of his subsequent vendee.   *Pierce* v. *Turner*, 5 Cranch, 154 ; *Henderson* v. *Downing*, 24 Miss. 106.   There is some plausible ground for holding that a purchaser from a purchaser who is protected by want of notice of a prior unregistered deed by his vendor, stands in his shoes, and so of the successive purchasers.   These are linked together by one connected chain, and the last may be said to occupy by representation the place of the first.   There is, however, no chain of creditors and no sort of priority or connection between the creditors of the vendor and those of his vendee.

No one ever doubted that the creditors of the grantor in the unregistered deed were embraced by the registry law ; and if we also include those of the grantee, by what rule are we to determine which set of creditors shall be preferred.   Not being creditors of the same party, no rule of priority can be established, and no rule of distribution of the property.   The result is, the creditors of the grantor, in any conflict, must take all.   In addition to these objections, the sale under the execution was a nullity because the property was in the hands of the receiver of the Federal court at the time of the levy and sale.   *Wiswall* v. *Sampson*, 14 How. (U. S.) 53 ; Kerr on Rec. 170–172 ; High on Rec. 110, 448.

*R. N. Miller*, on the same side, cited the following authorities : —

1. On the question whether the mortgage was valid against the judgment which the appellant claims : Code 1871, sect. 2304 ; 52 Miss. 159 ; 52 N. Y. 363 ; 5 Iowa, 357 ; 40 Ind. 37 ; 5 Coldw. 514 ; 1 Wall. 25 ; Cent. L. J., April, 1880 ; 2 Ired. Eq. 127 ; 42 Mo. 63.

2. As to the effect of the receiver's possession of the land : 14 How. (U. S.) 65 ; 8 Blatchf. 536 ; 5 Bank. Reg. 230 ; 16 Wall. 218 ; 6 Ves. 287, 335 ; 1 Jac. & W. 176 ; 3 Dan. Ch. Pr., sects. 1743, 1744 ; 1 Cox, 422 ; 9 Ves. 336 ; High on Rec.,

sects. 138, 141, 142, 422–424, 440–448, 602 ; 66 Pa. St. 160 ; 15 Am. Law Rep. 63; 2 Abb. (U. S.) 151; Lacey's Ry. Dec., sect. 15 ; Herman on Ex. 246 ; 2 Redf. on Rys. 510, 511, 364 ; Freem. on Ex. 129 ; Cent. L. J., September 12, 1879.

CHALMERS, C. J., delivered the opinion of the court.

The Mississippi Central Railroad Company was originally the owner of the land sued for, and as such executed, on May 1, 1872, a mortgage upon it, as well as upon all its other property, real and personal, to secure the holders of its bonds. This mortgage was not recorded in the county of Copiah, in which this land is situated. In April, 1874, the Mississippi Central Railroad Company and the New Orleans, Jackson, and Great Northern Railroad Company, in accordance with the provisions of an act of the Legislature authorizing the step, consolidated and merged themselves into a new corporation, which assumed the name of the New Orleans, St. Louis, and Chicago Railroad Company. (This corporation must not be confounded with the present defendant, known, by an inversion of the name, as the Chicago, St. Louis, and New Orleans Railroad Company, and which is the later creation of a subsequent organization.)

By the terms of the consolidation, the new corporation acquired all the property and franchises and assumed all the debts and obligations of the two corporations of which it was formed, and which became extinct by its creation. On the 17th of November, 1875, the mercantile firm of Faler & Co. recovered a judgment against the consolidated company in the Circuit Court of Copiah County, the same being based on a default of its duty as a common carrier.

This judgment was regularly enrolled, and a sale of the land in question having taken place under it, the same was bought by Faler & Co., the plaintiffs in execution, who subsequently conveyed to the plaintiff in this suit. Plaintiff's title, it will be seen, is thus derived through a judgment rendered against the consolidated corporation, who had obtained the land

from the Mississippi Central Railroad Company, the grantor of the unrecorded mortgage. This unrecorded mortgage, by proceedings in the United States District Court, instituted after the date of the recovery of the judgment of Faler & Co. in the Circuit Court of Copiah County, was ordered to be foreclosed by decree rendered on March 6, 1876, and at the sale under this decree defendants became the purchasers of this land, as well as of all the other property, rights, and franchises of the consolidated corporation. This sale took place more than a year after the sale under the Faler & Co. judgment. Defendants claim title, therefore, under the unrecorded mortgage, and for the purposes of this case may be considered as the assignees of that mortgage.

Some question is made as to whether the consolidated corporation, through a judgment against which plaintiffs claim title, had actual knowledge of the unrecorded mortgage executed by the Mississippi Central Railroad Company, from whom they obtained the land. We do not think that the consolidated company, or those who have title through it, can be heard to aver ignorance of any of the debts, contracts, or encumbrances of either of the companies by a merger of which it was formed. It exists and was created by an absorption of those companies. The acquisition of their property and franchises gave it being, and the payment of their debts and the fulfilment of their contracts was the law of its being.

It took the property burdened with the debts, and the payment of the debts constituted the consideration to be paid for the acquisition of the property. It held the property, therefore, charged with a trust in favor of all who had liens against it which were valid against those from whom it was derived.

The unrecorded mortgage, then, bound the land in the hands of the consolidated corporation, and could have been enforced against it. Can it be defeated by a creditor of the consolidated company, or by a purchaser under a judgment against it, who had no notice of its existence?

Apr. 1881.]    Miss. Val. Co. v. Chicago, etc., R. Co.    853

Opinion of the court.

If the consolidated corporation had been the maker of the unrecorded mortgage, any creditor of it who reduced his demand to judgment before record or actual notice of its existence would prevail over those whose rights depended upon it. Such we understand to be the effect of our registry laws. The utterances of this court have not always been harmonious on the subject of the rights of judgment creditors and purchasers at execution-sales as affected by the secret rights and equities of third persons. Undoubtedly at common law the execution purchaser was regarded as a mere volunteer, who acquired nothing more than the interest of the defendant in execution, and was liable to be defeated by any one who could show a legal or equitable right superior to that of the defendant; nor did it matter if that right was unknown to all the world, provided only it was available against the defendant.

If available against him, it was equally so against his creditors and assignees by operation of law.

The judgment creditor still remains to some extent a volunteer, and it is still true that a purchaser at an execution-sale obtains only the interest of the defendant in execution, *except where the registry laws otherwise provide.* But those laws do provide that " every conveyance, covenant, agreement, deed, mortgage, and trust-deed " must be recorded in order to be valid and effectual against " subsequent purchasers and all creditors ; " which is the same thing, of course, as saying that these conveyances shall, as to creditors, be absolutely void unless recorded.

Whenever an instrument which the registry laws require to be recorded has been made by a grantor having a beneficial interest in the property conveyed which is vendible under execution, and such instrument remains unrecorded, a judgment creditor who has no actual notice of it, nor anything to put him on inquiry, may subject the interest of the grantor exactly as if he had made no such instrument, and the purchaser at the execution sale will obtain a title superior to the rights of those who claim by, through, or under the unrecorded instrument.

Where the grantor is without beneficial interest, though clothed with a naked legal title, or where the outstanding equity of a third person is such as arises by operation of law, and is incapable of being made a matter of record, — as, for instance, where it is a resulting trust or a vendor's lien, — the registry laws have no application; and in such cases the judgment creditor remains, as at common law, a mere volunteer, because unprotected by any statute. The case of *Kelly* v. *Mills*, 41 Miss. 267, is an instance of the first class of cases above alluded to, though in the opinion there delivered the distinction here pointed out is not sufficiently dwelt upon. The turning-point in the case, and the feature that makes the decision correct, was the fact that the attached debtor (Griffing) never had any actual interest in the property, but was a mere naked trustee for others.

The case of *Walton* v. *Hargroves*, 42 Miss. 20, illustrates that class of cases where the equity asserted is one that needs not to be recorded, and ordinarily cannot be. It was a case of a vendor's lien, the creation of a court of equity; and as no record of it was necessary, it was held that there was nothing to shelter the purchaser at execution-sale from its operation.

The case of *Henderson* v. *Downing*, 24 Miss. 106, illustrates the general class of cases where the right attempted to be set up against the purchaser at an execution-sale grows out of an instrument which the law requires to be recorded in order to be effective against creditors, and which has not been recorded. It was correctly held that the execution purchaser obtained a good title, though the instrument was recorded before he bought, because the record did not precede the judgment, and it was the judgment which fixed the rights of the parties. To the same effect are *Humphreys* v. *Merrill*, 52 Miss. 92, and *Longbridge* v. *Bowland*, 52 Miss. 546.

Both in our State and in others there has been much confusion of utterance on this subject, in consequence of a failure to bear always in mind the change wrought by the registry laws. Undoubtedly the correct doctrine is that the judg-

ment creditor will subject the property of his debtor, stripped of all demands and interests of others, which must be evidenced by written instruments required by law to be recorded, but which have not been recorded, and of which he has had no notice before judgment; *provided*, the property be such as is subject to the lien of the judgment. In all other cases the creditor remains, as at common law, a mere volunteer, taking only the actual interest of his debtor, and liable to be defeated by anything that would divest the debtor himself of the property. Such is the doctrine announced with more or less distinctness in several of our own cases, and especially in the recent case of *Duke* v. *Clarke, ante,* p. 465; and such is stated in Rorer on Judicial Sales (sects. 707, 708) to be the later and better doctrine elsewhere.

We have been speaking of the rights of the creditor as against those claiming under secret conveyances from his debtor, but the case in hand is not of that character. Neither the plaintiffs, nor their grantor here, are or ever were the creditors of the grantor in the unrecorded mortgage, but of the grantee under that instrument. The Mississippi Central Railroad Company made the mortgage, and afterwards, by consolidation, conveyed the land to the New Orleans, St. Louis, and Chicago Railroad Company. It was this latter company that became the debtor of Faier & Co., and it was as their property that the land was sold. The question presented, therefore, is, whether the creditors of a subsequent grantee are so protected by the registry acts that they can resist the attacks of one holding under a secret conveyance, made by the grantor of their creditor before the property came into the ownership of the latter. Who are "the creditors" referred to in those acts? Are they the creditors only of him who makes the secret conveyance, or does the term embrace all who may, through all time, give credit to one who is clothed with the record title to the property?

It is insisted, with very great earnestness and ability, that the object of the registry acts is to give record notice to all

the world of the exact condition of the title to real estate, so that all men, whether they propose to become purchasers from or creditors of him who claims to be owner, can rely with perfect trust and confidence upon the public records.

It is further insisted that " all creditors " are placed by the law upon the same footing as " subsequent purchasers," and as the latter are protected where they buy in good faith from a grantee who has notice of the unrecorded instrument, so must the former be also. An exhaustive search of the authorities fails to bring to light any adjudicated case sanctioning this view. While it is true that there is great dearth of direct adjudication upon the point either way, it seems universally to have been assumed, and has been quite frequently declared, both in this State and elsewhere, that the purchasers and creditors referred to are purchasers from and creditors of the grantor in the unrecorded instrument, and that it is such purchasers and creditors only who are protected. As to these, the purchasers must be " subsequent " ones ; while " all creditors," whether subsequent or antecedent, are embraced, provided they have acquired liens before notice, actual or constructive, of the secret conveyance.

This point was expressly decided by the Supreme Court of the United States in *Pierce* v. *Turner*, 5 Cranch, 154 ; and though one judge dissented on the special facts of the case, even he admitted, as a general proposition, that creditors of the grantee in a secret conveyance were not protected by the statutes from the effects of a previous unrecorded instrument made by his grantor, of which he had notice, though his creditors did not. This seems correct on principle. The terms " debtor " and " creditor " are correlative in character, and unless something appears to indicate a contrary intention, we must understand the one as referring to the other. So, when the statute speaks of the secret conveyance of a grantor being invalid as to creditors, unless some other intention is in some way indicated we must understand the term as referring alone to *his* creditors. All other creditors, therefore, — that is to say,

creditors of all other persons, — not being embraced in the statute, remain as at common law.

To the suggestion that the object of the statute was to put " subsequent purchasers " and " all creditors " upon the same footing, and that as subsequent purchasers from a second grantee of the grantor in the secret conveyance were protected, so must the creditors of such grantee be also, there are two conclusive answers.

If it be true that subsequent purchasers from persons other than the secret grantor are protected by the statute, it is because they may still be deemed purchasers from him where they have bought from his grantee ; since, in such case, their title is derivative, and so flows through and from him that they are mediately, though not immediately, purchasers from him. Creditors, on the contrary, occupy no such relation to each other or to the successive owners of the property.   The claim of each is collateral to, disconnected from, and independent of the other, without any chain to bind the creditors of one to the creditors of the other, though both may have looked for satisfaction to the same property, owned in turn by their respective debtors.   In no possible way, therefore, can language intended by the statute to be applied to the creditors of him of whose secret acts the law-giver is speaking, be extended, upon any idea of privity, to the creditors of a subsequent holder of the property.

But it is not true that the registry acts protect, or were intended to protect, those who buy from remote holders of the property.   Such purchasers are protected by the common law and by their own good faith, or that of their vendors.   If their vendors have had no notice of the unrecorded deed, they will obtain a good title by reason of that fact, though they themselves knew of it.   If their vendors knew of it, but they did not, the same result will follow because of their own good faith ; and these results follow, not by reason of the registry acts, but because such was the law centuries before these statutes were enacted.   The registry acts operate, not for the protection of

those who buy, in good faith, property which the owner has already sold to another, but for the protection of the first buyer who, by recording his deed, can give notice to all the world without taking possession. The creditor, on the contrary, whom the common law regards as a mere volunteer, is dependent wholly on the statute, and where its letter fails, is utterly without protection.

In the case at bar, if the plaintiff company had bought the land in controversy from the consolidated corporation for value, and without notice of the unrecorded mortgage executed by the previous owner, the title would have been perfect though its vendor had knowledge of that mortgage. That its good faith will not alike protect where it derives title through an execution-sale is due to the fact that no statute so declares, and that from the time whereof the memory of man runneth not to the contrary the law has been otherwise.

A deed or mortgage taken in good faith from one who knowingly holds property encumbered by a secret lien will always defeat the lien; a judgment confessed or recovered will not, except where the secret lien has been created by the judgment debtor, and is of such character as is required by the registry laws to be recorded, but has not been recorded. If the distinction seems without intrinsic merit, it must be abolished by other departments of the government than the judiciary; and until it has been done, we can only say that time out of mind such has been the common law of England, and that as to it we must regard our law-givers as saying, with the barons at Runnymede, *Nolumus leges Angliæ mutari*.

Judgment affirmed.