THOMAS HENDERSON *vs.* R. N. DOWNING et al.

The judgment creditor had a right to enforce his judgment by a sale of the land, although notice of the existence of the deed of trust may have been given to him subsequent to the rendition of the judgment.

When the statute speaks of "subsequent purchasers," it means purchasers from the grantor directly, and not purchasers at execution sale.

*Dixon & Starkey* v. *Doe, ex dem. Lacoste,* 1 S. & M. 70, cited and explained, and declared not applicable to the case at bar.

If a judgment creditor would not be affected by notice given at a sale, the same rule will apply to the purchaser at the execution sale founded on such judgment.

A deed of trust conveying property to secure existing debts on which an extension of time is given beyond the usual period necessary to collect them by due course of law, is fraudulent as to existing creditors. *Farmers Bank of Virginia* v. *Douglass,* 11 S. & M., 469, cited and confirmed.

The statute of frauds declares all conveyances void, which are made with the intent to hinder, delay, or defraud creditors; and any deed of trust or mortgage which extends the time of payment to the debtor in renewal of an existing debt, beyond the period of time usual to enforce a claim by due course of law, must have the effect of hindering or delaying creditors not embraced in the deed in the collection of their debts, and must be *primâ facie* fraudulent.

Any provision in a deed which materially hinders or delays creditors in the assertion of their rights, especially when made with a reservation of any part of the property conveyed, to the grantor, is void.

The recitation of the provisions of the deed of trust, is sufficient to show that it is void and fraudulent as to creditors.

On appeal from the superior chancery court; Hon. STEPHEN COCKE, chancellor.

The bill charges, that on the 16th day of July, 1842, Thomas Rowan, James J. Rowan, and Mary Rowan, conveyed to orator in trust for the payment of certain debts, a large real and personal estate, to pay certain debts therein specified, " among which is a tract of land in Hinds county, known and described as follows, to wit, the south half section 2, and the north half section 11, in township 15 range 5 east, in the Choctaw land district, containing 635 81-100 acres; all of which will appear from " Exhibit A." This deed of trust conveyed an immense amount of property, real and personal, horses, mules, implements of husbandry, corn, fodder, hay, and every thing you can

Henderson *v.* Downing et al.

think of, and also the following reservations and conditions: that the parties of the first part retain possession of all and singular the property, real and personal, until a sale thereof, as afterwards provided for, and they are fully authorized to sell the growing crops, and apply the proceeds to the payment of small debts not enumerated in the deed, and the current expenses of the plantations and families, and pay over the surplus to said Henderson, trustee; and after the present year, the whole net income of said property, after deducting the expenses of said plantations and families of said parties, shall in like manner be paid over to said Henderson, or the said Henderson may, at his option, take possession of all the cotton raised on said plantations, as soon as the same is prepared for market, and sell the same at private sale, and with the proceeds thereof pay the current expenses of the plantations and families of the said parties of the first part, and out of the funds which come to the trustee's hands, after deducting, as aforesaid, he was to pay the creditors provided for, and accepting ratably, according to the debts of each; and if the net proceeds received by him, should not be sufficient to pay twenty per cent. in amount of all the debts and interest, then, at the request of a majority in amount of all the creditors, he might, and was empowered to sell for cash, on thirty days' notice, all of said real and personal estate.          .          .          .          .          .

It is further understood, that if the trust fund, upon a final sale of all the real and personal estate aforesaid, be insufficient to pay off all said debts, then the judgments were to be paid according to priority of maturity. Two creditors, named William N. Mercer and J. L. Bliss, did not accept. The other creditors, named John Kerr, Farmers and Merchants Bank of Memphis, Planters Bank, and her officers as commissioners of the Sinking Fund, Commercial Bank of Rodney, and Commercial Bank of Natchez, accepted the terms of the deed of trust, and, of course, are bound by it.

The bill then proceeds: " The property aforesaid was situated in different counties, and the deed being very long, required considerable time to be recorded in all, (no doubt of it!) in which the land lay, and the county of Hinds not being men-

tioned, orator did not know any of the land was situated therein, until he was informed the above tract had been levied on by the sheriff of Hinds to satisfy a judgment against said Thomas Rowan and others. Orator caused an agent to attend at the time and place of sale, and notify all persons of the trust, and forbid the sale, which was done. R. N. Downing, although thus notified, bought the land at said sheriff's sale, and took a deed for it. This recites a sale by virtue of an *alias fi. fa.* on a judgment in favor of P. G. Crujor against R. C. Stanford, Thomas Rowan, and James J. Rowan, dated December 2, 1842, for $1,259.38. The deed is dated 30th December, 1845, and recites a sale on the 3d Monday of July, 1845, at the courthouse of Raymond for $440, which Downing then and there presently paid. The *alias fi. fa.* came from the county of Franklin.

Charges, that the same day of the sale, and before the sale, the said deed of trust was deposited with the clerk of probate in Hinds for record. Charges, that since the sale by the sheriff, Downing has purchased said land from the tax collector for taxes, and that he has in due time tendered him the purchase-money, and all legal additions by way of damages, and all subsequent taxes, &c. The tender was made on the 1st day of December, 1847, and refused. Charges, that Henry Smith and R. B. Robb have or claim some interest by purchase from Downing, or otherwise, and that Robb is in possession and claims as. his own. Charges, that a large balance, more than $50,000, is still due on the deed of trust, and that the creditors have required the final execution by your orator of the trusts specified in said deed; is advised that said land was not subject to sale at sheriff's sale, and that the title conveyed by the sheriff to Downing, is inferior to that conveyed by the deed of trust; states that the sheriff's and the tax deed, are a cloud upon his title, and will depreciate its value; has frequently, in a quiet and friendly way, asked Downing to release, but he refuses.

Prays answer: that the sheriff's and tax deed be declared void; and that Downing, Smith, and Robb, be decreed to release to him such title as they have, or appear to have.

*Montgomery & Boyd*, for appellant.

The doctrine has been recognized in an important case in New York. Thompson, Justice, says: " The grantors having reserved to their own use, for their maintenance and support, a part of the property covered by the deed, forms no objection to the appropriation of the residue." *Murray* v. *Riggs*, 15 John. R. 589. The same doctrine has been declared in England, 5 Term R. 420.

In a late case, the court of errors in New York reviewed the decision in the case *Murray* v. *Riggs*, but do not overrule it. The scope of the decision seems to be, that such a reservation in the assignment of all the grantor's property would render the assignment void, if the assignee were insolvent; and the court dwells emphatically on the circumstance of insolvency at the time of executing the deed. The deed in that case proved the insolvency, for it made provision for the support of the grantor until he should be discharged from his debts; but not to exceed four years. All the judges recognize the authority of the English cases; but some of them take the distinction that in the English cases there was not any proof of insolvency, but, in truth, some proof to the contrary. *Mackin* v. *Cairns*, 5 Cow. R. 553.

The former decisions of this court recognize the force of the objections that this is not a general assignment, and that the grantor was not insolvent. At least, these things do not appear by the record. But, as the case of the *Farmers Bank of Virginia* v. *Douglass et al.* 11 S. & M. 469, will no doubt be relied on as authority for adjudging the deed of trust fraudulent on its face, we will notice, with a few critical remarks, those points which appear to affect the question.

The first principle stated in Judge Clayton's opinion, to which we object, is, that "no unreasonable delay should be interposed" to the collection of the debts of ordinary creditors by arrangements to secure preferred creditors. " In general, no further indulgence should be granted than the usual time of collecting debts by due course of law;" " yet there may be cases in which it would not be fraudulent to stipulate for greater delay." Ib. 539.

10 *

Henderson *v.* Downing et al.

The law does not permit a man to lock up an excess of property under the pretext of securing one of his creditors over others. If it be a mere pretext, we do not deny the position; but certainly the mere fact that the property was worth twice the amount of the debt at the date of the transaction, is no evidence that it was a "pretext," or that the parties had any dishonest design. Nor is it any objection to the honesty of the transaction, that the creditor was otherwise well secured. In actual sales, mere inadequacy of price is not evidence of fraud; gross inadequacy may be so, under circumstances. 12 S. & M. 424. "In mortgaging property, the use of which involves the consumption, is an evidence of fraud;" and on page 541: "When the right to use it is also reserved in the mortgage itself, it is fraudulent on its face." And it is argued, that, because the debt was to become due more than twenty-eight months after the date of the mortgage, before which time the potatoes, corn, fodder, &c. must be consumed or destroyed, it was manifest that the object was not to apply them to the payment of the debts, but to secure the debtor in their enjoyment. And it is concluded, that "the reservation in the conveyance of so much of these articles as was necessary for the support of the property, puts an impress of fraud upon it, from which there is no escape." We admit, that if the benefit of these articles is secured to the debtor, without any benefit therefrom to the creditor, it may be considered strong evidence of fraud. But it is equally clear, it is no evidence of fraud, that articles to be consumed in the use are set apart by mortgage or deed of trust for the security of creditors. It may be true, that the creditor receives no immediate benefit from the articles thus conveyed; yet, from the nature of the transactions, it may be very apparent the creditor receives the whole ultimate benefit; as, for instance, articles to be consumed for the purpose of reproduction, the benefit of which the creditor receives.

In this case now before the court, the corn, fodder, &c. are to be consumed in the ordinary course of cultivating a crop, the net proceeds of which is to be paid by the trustees to the creditor. Hence, the consumption is for the benefit of the creditor as well as of the debtor.

Henderson *v.* Downing et al.

The great object of procuring indulgence of a debt is to enable the debtor, by the use of the property in the mean time, to make the money to pay the debt; and securing to himself the possession of all things necessary to enable him to effect that object, is as justifiable, and as little attributable to a fraudulent design, as the act of securing the principal part. A debtor may secure to himself the quiet enjoyment of his plantation, slaves, horses, and mules; but he may not include meat, corn, fodder; without the use of which neither plantation, slaves, or horses, would be of any avail to debtor or creditor. Does not this sound like an absurdity?

The case of *Arthur* v. *The Com'l. and R. R. Bank of Vicksburg*, 9 S. & M. 429, is not stronger in its application than that above mentioned. The principle settled in Arthur's case is simply, that a deed of assignment by a debtor in failing circumstances to secure preferred creditors, by tying up the property until the income paid the preferred creditors, was fraudulent on its face. But, in the same decision, the court held, that the deed was not fraudulent in law, in providing for the loan of money, to be procured by the trustees to enable them to finish the road. This being a provision for increasing the capacity of the property to produce an income, is parallel to the ordinary provisions for cultivating a plantation.

In that case, the deed was a general assignment, and made provisions for a *pro ratâ* dividend among such general creditors as chose to exhibit their claims to the trustees, which was proof of "insolvency."

The fact that the judgment, which was enforced on the land in controversy, remained unsatisfied, does not of itself vary the case. The plaintiff may have sought to make use of the judgment for the purpose of procuring this land for a trifle; and, to effect that object, have neglected to pursue his remedy against Stanford, the principal debtor, who may have been fully able to pay it; and the Rowans may have declined paying until Stanford's means were exhausted, and a proper affidavit made that he had no property; without which the levy was unlawful, and the sale can confer no title. Hutch. Code, 853. Reserving a support for the families of the grantor out of the income, is

no more than under all deeds of trust and mortgages is reserved as a matter of course, and is but a fair compensation for the care, labor, and skill employed in producing an income, and, as before shown, does not amount to fraud *per se*. Securing the right to the grantors to designate the property to be first sold, is, in every respect, innocent, and presupposes an excess of property. The last objection is of the same nature. To save expense, and the trouble of removing negroes and other cumbersome property, it was proper to provide for the sale at the place where situated. Hutch. Code, 910.

*Guion & Baine* and *Whartons*, for appellees.

The nature of the right to be tried here is purely legal. And the question is, who has the better legal title ? Downing, who bought all the legal title to the land, the judgment bound by its lien, and could transfer by its execution ; or Henderson, who neglected to file his deed of trust until the day of the sheriff's sale, and who does not pretend that he ever gave any notice of his claim until that day ? The deed of trust was made the 16th July, 1842 ; the judgment was obtained the 2d December, 1842 ; and the sale of the land and purchase by Downing, was made the 3d Monday of July, 1845. The deed of trust was of no validity against creditors until filed for record, and it never was filed for record until the day of sale. " Creditors," in the statute, mean judgment creditors. 1 S. & M. 106 ; 11 Ib. 452.

The execution, remember, transferred to Downing the interest the judgment creditor had in the land. 13 S. & M. 149.

That was a specific lien upon it, and a right to sell it in virtue of that specific lien, and in enforcement of it to satisfy the judgment. The lien of a judgment is as secure as that of a mortgage. 7 How. R. 227, (at bottom) ; 6 Ib. 563 ; 2 Brock. R. 381. Our legal title, then, is as superior to theirs as if we had had a mortgage lien duly recorded, at the date of the judgment lien.

How is the legal title sought to be avoided ? By alleging that upon the day of sale they appeared, and gave notice of their legal title. And from that fact they draw the monstrous inference, that their legal title was converted into an equitable

one, and not only so, but into an equitable one superior to our legal title. Let the fact and principle be always kept in mind, that this is a conflict between legal titles; and the question is, Who has the best?

How can a notice *in pais*, such as is alleged, convert a legal title inferior to another with which it conflicts, into an equitable one, superior to the same one which was before the notice better in law and equity to it? By what sort of legal legerdemain and equitable necromancy can such things be? The whole thing is absurd, to say the very least of it.

The next point we make in this case is, that the deed of trust under which Henderson claims, is fraudulent on its face, for illegal reservations of the use of the property to the grantors. No reservations can be more direct, or more against law; first, "little debts" of theirs were to be paid. How large are little debts? Then the families of the grantors were to be supported, and this for five years; twenty per cent. being payable each year. And then no sale could ever take place at all without a majority of these preferred creditors consented; and then they were to be paid ratably; and if, at the final sale, all were not fully paid, the judgments were to preserve their priority of lien. It was a mere contrivance between the judgment creditors, who were a majority of those preferred, to keep in being their preference or priority of lien which the law had given them, and at the same time to let the grantors retain the enjoyment of the immense estates conveyed.

*T. A. Marshall*, on the same side.

Mr. Justice YERGER delivered the opinion of the court.

The appellant filed his bill, alleging that on the 16th day of July, 1842, Thomas and James J. Rowan, conveyed by deed of trust, to the appellant, as trustee, a large amount of real and personal property, situated in different counties in the State of Mississippi; and that, among other tracts of land so conveyed, was one situated in the county of Hinds. The deed of trust is made an exhibit to the bill. The bill also alleges, that the tract of land, situated in Hinds, was designated by numbers, and

that the deed of trust did not designate it as situated in Hinds county; and that the trustee was in fact ignorant that it was situated in that county until informed that it had been levied upon to satisfy a judgment and execution against Thomas Rowan and others; and that upon being informed of this fact, he caused an agent to attend at the sheriff's sale, and give notice of the existence of the deed of trust to persons attending there to bid; but that Reuben N. Downing nevertheless did purchase the tract of land at the execution sale, although he had been previously notified, before his purchase, of the existence of the deed of trust. The bill also states, that the deed of trust, on the day of the sale and before the sale took place, was filed for record in the office of the clerk of the probate court of Hinds county, and duly recorded by him. The bill prays that the deed to Downing, as a cloud and incumbrance on complainant's title, may be cancelled, &c. The defendants demurred to the bill, and the chancellor sustained the demurrer and ordered the bill to be dismissed, from which an appeal has been prosecuted to this court.

There were two causes relied upon to sustain the demurrer in the court below. First, that the allegation of notice to the purchaser at the execution sale of the existence of the deed of trust was not sufficient to defeat the title obtained by him at the sale, as the deed of trust was not recorded in Hinds county before the rendition of the judgment.

Second, that the deed of trust was fraudulent on its face as to the creditors of the grantors.

In relation to the first point, it may be remarked, that the statute of this State has declared, "that all deeds of trusts or mortgages, whensoever they shall be delivered to the clerk to be recorded, shall take effect and be valid as to all subsequent purchasers for valuable consideration without notice, and as to all creditors from the time when such deed of trust or mortgage shall be acknowledged, proved, or certified and delivered to the clerk of the proper court to be recorded, and from that time only." Hutch. Code, 606, § 5.

This court, in the case of *Dixon & Starkey* v. *Doe, ex dem. Lacoste,* 1 S. & M. 70, held, that creditors equally with subse-

quent purchasers, were affected by notice of an unregistered deed. Without controverting that decision or making any further comment on it, than to say that it will not be extended any farther than the case there made, we need only remark, that in this case it does not appear, from the proof, that the judgment creditor had any notice of the existence of this deed of trust, either when the debt was contracted or before the judgment was rendered; and such being the fact, in our opinion, the judgment creditor had a right to enforce his judgment by a sale of the land, although notice of the existence of the deed of trust may have been given to him subsequent to the rendition of the judgment.    And as he had the right to sell the land under such circumstances, the fact that notice was given to purchasers at the execution sale of the existence of the deed, cannot affect the right of such purchasers, or postpone their rights to the grantee in the deed of trust.    When the statute speaks of " subsequent purchasers," it means purchasers from the grantor directly, and not purchasers at execution sale.    The last-named class of purchasers occupy a position at least as favorable as that of the judgment creditor; and if the judgment creditor would not be affected by notice given at the sale, but might still go on and sell the property, his judgment lien being deemed paramount to the unrecorded deed, the same rule must be applied to the rights of a purchaser at execution sale founded on such judgment.    See 4 Rand. 208.    Martin & Yerger, R. 385; 1 Dev. & Battle, 55.

Any other construction of the statute would lead to the palpable absurdity of declaring to the judgment creditor that he might appropriate the land of the debtor to satisfy his judgment in preference to the grantee of an unrecorded deed, yet at the same time it would enable that grantee to attend the sale; and, by giving notice of the deed, deter purchasers from bidding, and thus destroy the chief benefit that a creditor would derive from the preference given him.

There is another ground assumed by the appellees, entirely decisive of this case in their favor, even if we should admit that notice of the unrecorded deed to them was equivalent to its registration, according to the statute.    In our opinion, the

deed of trust from the Rowans to Henderson, is fraudulent and void on its face as to the creditors of Rowan. A very large estate in land and slaves is conveyed by the grantors, for the purpose of paying debts owing by him, the most, if not all, of which debts had already ripened into judgment; and, among other provisions contained in the deed of trust, will be found one, which extends the time of payment for five years, upon the payment of an annual instalment of *one fifth of the debts secured*; and by another provision, the grantors stipulate that out of the proceeds of the growing crop and of the future annual crops that may be raised, " the current expenses of the plantations, and of the families of the grantors shall be first paid, and only the surplus or remainder, after such payments, was to be paid and delivered to the trustee in extinguishment of the debts secured by the deed of trust.

In the case of the *Farmers Bank of Virginia* v. *Douglass*, 11 S & M. 469, this court held, that as a general rule, when a mortgage is executed to secure the renewal of a debt due, no farther indulgence should be granted than the usual time of collecting debts by due course of law. It was suggested, in the same opinion, that "perhaps there might be circumstances in which it would not be fraudulent to stipulate for greater delay; as where the debts are large, and the property conveyed large, and where also the personal exertions of the debtor are relied on as one means of payment."

We fully concur in the proposition established by the court in the above case, that a deed conveying property to secure an existing debt, on which an extension of time is given beyond the usual period necessary to collect the same by due course of law, is fraudulent as to existing creditors of the grantor; but we do not believe that good policy, or a fair construction of the statute of frauds, will justify a court in affixing to the general rule, the exception suggested by the court in the same case. The statute of frauds expressly declares all conveyances void, which are made with the intent to hinder, delay, or defraud creditors; and every mortgage or deed of trust, which extends a time of payment to the debtor, in renewal of an existing debt, beyond the period usually requisite to enforce a claim by due course of

law, must necessarily have the effect of hindering or delaying creditors not embraced in the deed, in the collection of their debts, for the period of the extension so given ; and as such is, and necessarily must be, the effect of such an instrument, the conclusion is irresistible, in our opinion, that such must be held *primâ facie* to have been the intention of the debtor. The stipulation contained in this deed of trust, that the grantors should have five years' time, within which to pay the debts thereby secured, therefore renders it fraudulent and void as to existing creditors.

But the deed of trust contains another stipulation equally, if not more fatal than the above, to wit : that the family expenses of the grantors shall be paid out of the product of the property conveyed by the deed of trust, before payment of any part of the debts. This court has held, in several cases, and the rule established by it is, in our opinion, sanctioned by every principle of morality and good policy ; that any provision in a deed, which materially hinders and delays creditors in the assertion of their rights, especially when coupled with a reservation of any part of the property to the grantor in the deed, makes the whole void. 11 S. & M. 394; 4 Ib. 229. Tested by this rule, it is clear that this deed of trust is not valid as to creditors. A very large estate in land and slaves, and the annual product thereof is conveyed, to secure debts already due and in judgment. The debtors stipulate by the deed that they shall have five years' time within which to discharge the debts, and that, in the mean time, the expenses of their families, and this, too, to an indefinite extent, shall be defrayed from the proceeds of the property, before any portion of it shall be applied to extinguish the debts secured by the deed; and all other creditors must, during this long period of time, be hindered and delayed in the collection of their debts. The bare statement of the provisions of this deed, is sufficient to declare its character. If the courts of the country were to sustain its validity, it would be equivalent to a declaration, that by means of conveyances of this kind, debtors could lock up for an indefinite period of time, their entire property from the claims of creditors, and at the same time

appropriate the proceeds of it to the maintenance and use of their families.

Let the decree of the chancellor be affirmed.