## SIMON MYERS *v*. T. J. BUCHANAN.

1. RECORD OF DEEDS—DESTRUCTION OF RECORD BOOK DOES NOT AFFECT THE RECORD OF DEEDS AS NOTICE.—After a deed of trust has been duly recorded, the partial or total destruction of the record book containing it does not impair the lien or affect the record of it, as legal notice.

2. MECHANIC'S LIEN—WORKMAN AT SO MUCH A DAY HAS NO LIEN.—A mechanic who works by the day at a *per diem* is not entitled to the benefit of the law giving the mechanic a lien upon the building erected.

3. FIXTURES REMOVED FROM LAND MORTGAGED MAY BE FOLLOWED.—Materials composing a mill and appurtenances annexed to the freehold, and embraced in a deed of trust to secure a debt, being removed and erected on the land of another, who had knowledge of the removal, may be followed in equity and made available in favor of the holder of the deed of trust.

APPEAL from the chancery court of Chickasaw county.

*J. A. Orr*, for appellant.

1. If the record book in which the deed had been recorded had been consumed by fire, the lien of Myers was not impaired.    The Code, p. 359, articles 311, 314, vested Myers with certain rights when he complied with the registration laws.    The statute did not contemplate a destruction of the public records, and hence that contingency is not provided for in the Code.    It is true subsequent legislation provided for supplying the loss of burnt records, but that legislation did not assume to divest rights which had previously prevailed, as is plainly seen from the fact that the acts of 1863 and 1864 do not impose any penalties on parties who did not avail themselves of the provisions of these

acts. There is no clause in either of them which provides that, unless parties have their deeds re-recorded, their liens springing from the first act of registry shall cease to operate. Congress, to compel the observance of the stamp laws, provided that parties, within twelve months after the passage of the act, should stamp their instruments issued subsequent to 1862 ; and, in default of such stamping, the instruments should not be used as evidence in the courts. Many other similar retrospective laws have been enacted. It was competent for the legislature to have provided that parties should re-record their deeds when the first record had been destroyed within a given space of time, or that the liens springing from the first act of registry shall cease to operate. But they contain no such provision. Hence I insist that Myers is not responsible for the loss of the record. He did not lose the benefit of his trust deed, and Buchanan is fully affected with notice of Myers' rights through the registration laws, to the property he (Buchanan) now enjoys.

It was argued in the court below that the mutilated condition of the record relieved Buchanan from the effect of the registration, and that he is not chargeable with notice of Myers' rights. In support of this assumption, they rely upon an agreed state of facts, "that the probate court records of Chickasaw county, in the month of April, 1863, were in part burnt, mutilated and torn ; that during the whole of the year 1865, record book L, of said office, together with all the record books of said probate clerk's office, were lying in one confused mass, without a back, index or margin, in the probate clerk's office." Does this agreement admit any fact showing that Myers' trust deed or the index book were touched by the fire ? Is there an intimation that it did not stand full and plain with its index in the pile of records ? The manner of keeping the records, whether on shelves or on the floor, is a matter of taste to the custodian. He is required to record deeds in well-bound books, and to pre-

pare an alphabetical index, and this was done; but we see no statute which requires him to place his books on shelves. He is further required to grant access to every person, at proper times, to such books. Is it pretended that Buchanan did not have free access to every book in the office? Is it contended or intimated that this deed and the index could not readily have been found by making an examination? The phraseology of the agreement might imply that the index had been totally destroyed. This is not the meaning of the agreement. "Index books" are generally small paper-backed books, with blank leaves, lettered alphabetically, and inserted in the large book; they are preferred by officers, because of the convenience of entering the names of the parties when recording deeds; the conveyance can be indexed without closing the record book. Record book L had such an index, and that index was not touched by the fire, as is shown from the record of the deed and the index.

The third consideration which I present as showing the conclusiveness of Myers' trust deed against Buchanan is, that it is directly charged in the bill, and not denied in the answer, and established by the testimony, that, prior to Buchanan's purchase at the sheriff's sale, he had actual notice of Myers' trust deed. It is wholly immaterial, therefore, whether there was any record of Myers' deed. Buchanan, and all other bidders, were notified by Myers, that he had an older trust deed on the property about being sold. I conclude, therefore, that in any view which can be taken of the case, Buchanan's purchase at the sheriff's sale was subordinate to Myers' right, and that this sale did not divest Myers of his interest in the property. In May, 1866, Brownlee and wife executed a second trust deed in Myers' favor upon the new mill erected on the "Gee Place," which was on Buchanan's land, and at the maturity of the second deed. The trustees in each deed, Orr and Owen, sold the interest of Brownlee in each mill, and Myers became the purchaser. What did he gain by the execution of this sec-

ond deed, and what by his purchase at the trustee's sale?
If the English doctrine of tacking, as stated in 1 Story's
Eq. Jur., § 412, *et seq.*, prevails in this state, the lien given
by the second deed, in point of time, relates back to the 2d
May, 1861, the date of the record of the first deed. This
doctrine has been repudiated by several American courts,
but I am not aware that this court has decided the question.
However this may be, it is clear that all the interest which
Brownlee owned, legal or equitable, in the new mill, vested
in Myers' trustee by the deed in 1866, and the subsequent
sale by the trustee vested Brownlee's rights in Myers. The
equities of Brownlee were expressly assigned by the deed.
This brings us to the consideration of the point on which
Buchanan chiefly relies. His counsel insisted that he was
not affected with notice of Myers' deed of 1861, and that
when he bought at the sheriff's sale, he secured all the
interest Brownlee had in the new mill. That the mechanics
had their judgments legally, and that Myers lost his rights
through his deed, when the mechanics obtained their judg-
ments and sold thereunder.

My reply in part to this assumption has been heretofore
made. I have shown that Buchanan, in any view of the
case, was affected with notice of Myers' lien? Now let us
examine into these two judgments in favor of the mechanics
who were employed by Brownlee to erect the new mill at the
Gee place. They were obtained in November, and the sheriff
sold under them in December, 1866. Myers' second trust
deed from Brownlee had been executed more than six
months before these judgments were obtained, and his first
deed was six years older than the judgments. Let it be
remembered that Myers was no party to the suits against
Brownlee. These judgments, so far as Myers was con-
cerned, were invalid and divested him of no interest acquired
through his senior liens. Here we see that the mechanics
instituted proceedings against Brownlee to sell the mill
house, and that the mill and mill-house were sold on the 3d
of December, 1866. These were erected on Buchanan's land

out of materials which had been conveyed by the trust deed to Myers. The legal title to the land and the materials was not in Brownlee, the defendant. The legal title to the land was in Buchanan, and the legal title to the mill and the machinery was in Buchanan and Myers' trustee. Myers, nor his trustee, nor Buchanan were parties to the suits instituted by the mechanics. Now by what principle, either of common or of statutory law, can a proceeding, instituted by the mechanics against Brownlee, reach the mill and machinery, when the title to none of the property was in Brownlee, but was in Buchanan and Myers' trustee who were no parties to the suit?

In Hoover v. Wheeler, 23 Miss. 314, it was held, that mortgaged property could not be incumbered by the owner with a mechanics' lien. Now this mill-house had been erected on the Gee place out of materials from the Flatwood mill-house, which is variously estimated at from $1,000 to $1,400, and all the machinery, except the engine and boiler, which had been conveyed to Myers in 1861, and which, without his knowledge or consent, had been removed from the Flatwood's place. The bill directly charges, upon information and belief, that not only Buchanan but all the mechanics knew that Brownlee had torn down the Flatwood mill-house and was removing it to the Gee place, and this allegation is proven by Whittier, one of defendant's witnesses. Then Hoover v. Wheeler prevents the mechanics from incumbering the trust property with their lien. The same rule was followed in 36 Miss. 37, and the principle reasserted that a junior mechanic's lien cannot displace a senior lien. In two other cases in which the lien of a mechanic is considered principally applicable to this case are settled which invalidate the judgments through which Buchanan claims. Myers was not, nor was his trustees, made parties to the mechanics' suits against Brownlee. Therefore his rights could not be prejudiced by the judgment of the court condemning the property covered by his trust deed. This was the rule in Falconer v. Frazier, 7 Smedes

& Marsh. 235. The other case was that in 8 ib. 444, in which it was held, that the contracting party must have title to the property before he can incumber it with a lien. In this case we have shown that Brownlee had no title to any of the property which was sold by the sheriff. The statute of frauds, to invalidate the verbal contract between Buchanan and Brownlee, by which Brownlee was to become half-owner in the mill and in the land on which it was erected, was not relied on by the counsel for Buchanan in the court below. Should that question be raised in this court, I think it clear that a parol contract for the sale of land will be enforced where the parties act upon the contract, and the one party knowingly and willingly accepts the improvements on the land, which constituted the consideration, it is performance. 1 Lead. Cas. in Eq. 732, 733. This question is well discussed under the title of License, in Am. Lead. Cas. 667, and the contract of Buchanan and Brownlee is valid. So in 23 Ind. 562.

*J. R. McIntosh,* for appellee.

It was admitted in the court below, that at the time the contract was entered into between defendant and Brownlee, and the removal of the mill-house, machinery, etc., from the land incumbered with the trust deed, to the land of defendant; that all of the records of the probate clerk's office of the county in which this property was situated, including record book " L," in which appellant's deed was recorded, were lying in the clerk's office in one confused and disorderly heap, in part burnt, torn and mutilated, without a back, margin or index. There was no guide to the record of any deed in that disordered heap. This defendant cannot now be charged with constructive notice of that deed by such a record. That " constructive notice" is inferior to actual notice has been so often reiterated by all the courts, that to assert it is to substantiate it; and to the end that parties be charged with it, all the formula of the law must be strictly complied with. The law presumes that every

man investigates the records to ascertain the status of property at the time he contracts for it. It does not presume that every man is cognizant of every other man's property in his county, for which he cares nothing, and in which he has no interest. But it presumes that a party, before paying his money, will examine the records, and to enable him to make that investigation, it requires the clerk "to record all deeds in a well-bound book and on good paper." He is also required "to put a complete alphabetical index to each volume and grant every person free access to such books," etc. See Rev. Code, art. 35, p. 315. Such a record is notice to the world, because it is an easy matter for any one, with an alphabetical index to a book, bound and kept as the statute requires, to ascertain the contents of that book. The very manner that is required by law for the record of deeds shows conclusively that no one is presumed to know of every deed upon record the moment it is placed there; but he is presumed to acquaint himself with the condition of property for which he is about contracting; hence the facilities for that investigation. The language of this court in Harper et al. v. Tapley et ux., 35 Miss. 509, sustains this theory.

Hence the bold position first assumed by appellant's counsel: "That if the record of appellant's deed of trust had been consumed by fire, his rights would not have been affected, or his lien improved," is wholly untenable. Can it be possible that the law presumes that from the mere recording of a deed the whole country is permeated, as it were, with a knowledge of its contents? Such a law would be more intolerable than those of Caligula that required the edicts of that despot to be written so fine and posted so high that his menial subjects could not read them. Chancery, with her soft hand and evenly balanced scales, would recoil with horror from such a proposition. If such were the law, then why keep records with order and system and in form? And why the facilities such as an index to each volume to facilitate their investigation?

In Speer v. Evans, 47 Penn. 141, *et seq.*, the language of the court was: "This was not the case of an unrecorded mortgage. It was duly recorded, and, as between the parties thereto, the mortgagor and mortgagee, was in all respects a valid and effectual mortgage. But it was not duly indexed, and not, therefore, constructive notice to third parties. As a guide to inquirers the index is an indispensable part of the recording, and without it, the record affects no party with notice," etc, which confirms our position, that to charge third parties with constructive notice the record must be perfect at the time parties contract for the property. If it is not, and it is the fault of the custodian, he is responsible for all damages to the parties aggrieved. But in this case it was the negligence and fault of the appellant himself. For the legislature of 1863 authorized parties who held deeds "the records of which had been lost, mutilated or destroyed, to have them recorded, when such recording anew should be as effectual and good in law and equity as the original record might or could have been." That act provided that when the record of a deed was mutilated (and it was admitted that this record was mutilated), that it might be recorded anew. It is evident from the reading of the act that the legislature recognized records in the condition of the records of Chickasaw county, to be wholly ineffectual and inoperative. It is further evident that it went to say, that when a deed, the record of which was mutilated, was not recorded anew, that the original record should not be good and effectual. That same legislature provided for judgment creditors to have their judgments re-instated, etc., where the record of them in the circuit court had been destroyed. Why the necessity of having the judgments re-instated after it was obtained and enrolled if its validity was not destroyed by a destruction of its record?

Rev. Code, p. 308, art. 14, re-invests the legal title in the mortgagor. That deed was made in April, 1861. The contract between the defendant and Brownlee, the mortgagor, concerning the property in question, was made in the fall of

1865, after nearly five years had intervened. The grantor was in possession all the while, exercising acts of ownership over the property. The *cestui que trust* was lying quietly upon his oars, manifesting no interest or concern whatever in the matter, keeping his old deed in his pigeon hole, refusing to avail himself of the opportunity to have it re-recorded, as the acts of 1863 provided, and as every one, except himself, had done. Was it not, under the circumstances, reasonable to conclude that satisfaction had been entered, and the legal title re-invested in Brownlee? In other words, how could he know, from an examination of those records, but what satisfaction had been entered? There was no margin to the record, it had been burnt. Hence, the record was imperfect. It failed to show all that the law provided it should show, the condition of the property, which is the object and purpose of a record. But defendant is sought to be charged with actual notice of this trust deed, by virtue of appellant's proclamation to the bidders at sheriff's sale, at which defendant became the purchaser of this property. That sale was made to satisfy certain mechanics' liens which had accrued to these mechanics at the time they commenced their work, many months prior to this proclamation. According to the testimony of Wright, he and the other mechanics commenced work on February, 1866, and he says he worked thirty-six or thirty-seven days. The proclamation by Myers was made at sheriff's sale in December, 1866.

. But appellant relies upon a second deed of trust executed by Brownlee and wife to Owen, trustee, to better secure the same debt; executed May 3, 1866. Why the second deed, if the first was good? But I insist that no title to any property whatever passed in that second deed for the following reasons : 1st. Because, under the terms of the contract between Buchanan and Brownlee, for the erection of the partnership mill, Brownlee acquired no interest or title to the property of Buchanan. That contract was conditional. The conditions were that Brownlee was to construct, at his own

expense, a good merchantable mill, by the 9th day of June, 1866, before he would be entitled to any interest in the property. The proof is, that these conditions were never performed. He says : "It was no such mill as was contemplated by the contract, and was wholly unprofitable," etc. 2d. Because it was a verbal contract for the sale of lands, and hence void under the statute of frauds. 3d. Because it purported to convey the very property that he had conveyed in the deed of 1861, hence the title at the date of the execution of this second deed was outstanding in another. 4th. Because whatever interest Brownlee, as proprietor, possessed at the date of the execution of this second deed, the 3d day of May, 1866, was incumbered with the mechanics' lien which accrued in July, 1866, as shown above. 5th. Because the deed was not acknowledged by the wife as the statute requires. Hence, I deem it wholly unnecessary to reply to the doctrine of tacking invoked by appellant, which every authority flatly repudiates.

Appellant has sought to charge defendant with the value of mill, house, gearing and machinery erected on the "Flatwood land," as well as all that was expended by Brownlee in erecting a worthless mill upon the "Gee place." If defendant and the mechanics had actual notice of Myers' deed even then the defendant could not be charged with only the value of the material removed from the Flatwood land and erected upon defendant's land. Hence objections were made in the court below to the reading of the depositions of Tubb, Woodall and Wood, and so much of Brownlee's deposition as related to the value of the property on the "Flatwoods land," for the reason that those depositions proved only the value of the property before it was reconstructed upon defendant's land, which objections were sustained by the court below. The depositions of Whitten, Wright and Jones show that Brownlee kept mechanics and workmen employed, at high prices, by the day, when he had no material for them to work. Should defendant be

charged and made to pay Myers, for the reckless extrava-
gance of Brownlee? The proof further shows, that but a
very small proportion of the old mill-house was used in the
construction of the new one. What new material was used
was certainly not incumbered with any lien in favor of
Myers. Again, the answer of defendant charges that he
proposed to Myers, that if he (Myers), after his trustee's
sale, would go forward and carry out Brownlee's contract
with him — make the mill a good, merchantable one — he
(defendant) would subrogate him (Myers) to all of Brown-
lee's rights, etc.; that is, would give him a half-interest in
the land, mill, etc. Appellant scorns the equitable propo-
sition, and brings his suit.

*A. Y. Harper*, on same side.

This cause being brought here by writ of error, this court
will affirm the judgment of the inferior court unless errors
are apparent upon the face of the record which would justify
a reversal. Matters *en pais* which are *de hors* the record
will not be considered in passing upon the merits of this
case, as there is no bill of exception which even purports to
present all the facts in the case. It will not be denied that
Buchanan acquired, through his purchase at the sheriff's
sale, all the right, title and interest which the mechanic had,
notwithstanding the proclamation of Myers on the day of
sale, that he held certain trust deeds on the property sold,
and this publication of such notice could not affect pur-
chasers under that judgment, and the purchaser bought all
the right, title and interest of the defendant Brownlee to the
said property at the time the lien of the mechanic attached
thereto.

The contest is, as to the superiority of the mechanics' lien
over that of the prior incumbrance in favor of Myers by
deed in trust executed April 16, 1861. This deed in trust
conveyed to Myers, as between Myers and Brownlee, all
the right and title which Brownlee had to the property
therein mentioned, and is valid as between the parties,

whether admitted to record or not. It will be borne in mind that when Brownlee executed this deed in trust in favor of Myers to the negroes and land mentioned in the deed, there was no mill-house, no machinery, and no gearing situated upon this land. In a word, none of the property bought by Buchanan at the sheriff's sale was in existence at the date of the execution of said deed, but was afterward reared and constructed upon the mortgaged premises, and on this account alone Myers claims a lien upon them, as being attached to the mortgaged land, and being regarded as a part of the freehold. This doctrine is true only so long as these remain a constituent part of the freehold. That just so soon as they are detached from the mortgaged premises and cease to be fixtures, and are removed to another portion of the country and erected upon a different parcel of land, whether with or without the consent of Myers, his lien as to third persons without actual notice is clearly gone, and no purchaser of this property for a valuable consideration and without actual notice could be affected by this mortgage lien, because the record, if accurately and thoroughly examined, would not put the purchaser upon his guard as to this property in its new location. The record itself was not notice to the world that Myers had any lien whatever on the mill-house, gearing, and the machinery which was now situated in a different portion of the country, and upon lands not described in the deed. Hence the anxiety of Myers to procure another deed in trust, and to have it properly placed upon record. This new deed was executed May, 1866, and is certainly inoperative as against Buchanan. First, said deed purports to convey the title to the land upon which the mill-house was last erected, when there was no title whatever, either legal or equitable, in Brownlee as the contract for the sale of the land was never reduced to writing.

Said deed purports to convey the very same interest to the property on the land which had already been conveyed by Brownlee to Myers' trustee in his trust deed in 1861.

Said deed is not properly acknowledged by the parties and does not show when the said deed in trust was signed, sealed and delivered, and is not such notice as the law requires and cannot affect innocent purchasers for a valuable consideration.

It is inoperative as to Buchanan because it was executed in May, 1866, and the mechanics' lien accrued in the month of February, 1866, several months prior. This is the time when the mechanic began to construct the mill-house on its new site, and his, the mechanics' lien attached from that date, the contract being then made and the work begun. It is true that the contractor answers there was no contract between him and Brownlee and that he charged $4 00 per day for his work, but he evidently meant that there was no stated price between them as to what he would charge, and the other give, for his services, not that there was not a contract between the parties that he was to build the mill-house, etc. He states that he did complete the job in thirty-seven days and a judgment was rendered for the amount due him. The lien attaches from the time of making the contract, and not from the time the work is commenced. Bell et al. v. Casper, 26 Miss. 650; Houck on Liens, 145; Mills et al. v. Canton Co., 3 Mo. 234; Du Bois v. Mitson's trustees, 21 ib. 213; Pennock v. Hoverer, 5 Rawle, 291; Am. Ins. Co. v. Pringle, 2 Serg. & Rawle, 133; Julian Gas Light Co. v. Hurley, 11 Iowa, 523.

The principle which governs, in the case of lands, is declared in the case of Wheeler v. Hoover, 23 Miss., and there is a difference in principle when the building and fixtures alone are sought to be subjected. Otley v. Haviland et al., Clark & Co., 36 Miss. 37.

It is well settled that a mortgagor, in possession of the mortgaged premises, has the right to contract with a mechanic to construct buildings and make other improvements without the written consent of the mortgagee, and that the lien of the mechanic attaches to the buildings and other improvements, and that this lien is superior to the

lien of the mortgagee, and, on the other hand, the lien of the mortgagee on the land is superior to the mechanics' lien. The same principle prevails here as attains in Illinois, namely, that when prior incumbrancers create their lien, they look to the land and its condition at the time the lien is given and contract with reference thereto, but that mechanics and material men look to the buildings and improvements and not to the land and contract, with reference thereto. "The section," says Walker, J., "confers a superior lien upon the mechanic and the material men upon the improvements and materials to that of the prior incumbrancers. Under the section a person holding the prior lien must look alone to the property as it was before the mechanics or the material men's lien attached, and they must look to the improvements or materials, unless the proceeds of the sale are sufficient to satisfy both, or there is a surplus of either fund, which, if necessary, may be applied to the satisfaction of the other liens. Smith v. Moore, 20 Ill. 326 ; Gaty et al. v. Casey et al., 15 ib. 189. This doctrine is clearly deducible from the very language of our statute. Art. 1, p. 327, Rev. Code, gives the mechanic a lien on mills, bridges, buildings and upon any fixed machinery or fixtures for manufacturing purposes absolutely, but gives a lien upon the land, *sub modo* only, viz., as against purchasers and incumbrancers in good faith, and for a valuable consideration, without notice of the lien from the time the contract is filed in the probate clerk's office, or from the time of the commencement of the suit.

In order to get a lien upon the land itself, the contractor must have his contract, if written, recorded in the office of the clerk of the probate court of the county where the building or improvement is situated ; but we apprehend that it is altogether different as to the lien on the improvements and buildings. Rev. Code, p. 328, art. 5. If there be a lingering doubt upon this question, that doubt will be removed by a consideration of art. 13, p. 329, Rev. Code, which provides, that the deed given by the sheriff, if for the

building and improvements alone, shall convey to the purchaser the said improvements and buildings, free from any former incumbrance upon the land ; but if the deed be for the land, it only conveys the land, subject to all prior incumbrances.    Like remedial statutes, the mechanics' lien statutes must be liberally construed, and the lien must not be defeated by too rigid a construction, as they have always been favored by the courts.    Houck on Liens, 78, 80 ; 1 Mad. Ch. 342 ; Brown v. Story's Admr., 4 Metc. (Ky.) 223, 318 ; Patrick v. Ballantine, 22 Mo. 147 ; Barney v. Thompson, 2 Swann, 315 ; Tuttle v. Montfort, 7 Cal. 358 ; Buck v. Bryan, 2 How. 874.

There had been no sale under the deed of trust in favor of Myers when the mechanics' lien attached, and Brownlee, as against the world, was the legal owner of the mill-house, etc., and in possession of the same.    Rev. Code, art. 12. "And before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed in trust, except as against the mortgagee and his assigns, or the trustee, after breach of the conditions of said mortgage or deed in trust."    By the term "owner," employed in our statute, is not meant alone the owner in fee, but every legal and equitable holder of real estate or lessee is included in this term.    Houck on Liens, 87 ; Belmont et al. v. Smith, 1 Duer, 678 ; Rughash v. Foote, 8 Smedes & Marsh. 451 ; Falconer v. Frazier, 7 ib. 242 ; Kirk v. Taliafero, 8 ib. 760 ; Bell et al. v. Cooper, 26 Miss. 650 ; Laird v. Muirhead, 31 ib. 89 ; Halbery v. Henderson, 33 ib. 261.

TARBELL, J. :

Simon Myers, complainant, in 1868, filed his bill of complaint in the chancery court of Chickasaw county, against Thomas J. Buchanan, to recover the value of the lumber, materials, machinery, etc., constituting a saw and grist-mill, located upon the land of defendant, together with a share of the profits of said mill, in the possession of the defendant,

and to have conveyed to him the interest of one Brownlee, in the mill and in certain lands whereon the said mill is located, under a contract between Brownlee and Buchanan. From the arguments of the several counsel, the case turned below, and is supposed to depend here, upon the question, whether the defendant, Buchanan, had notice of the prior lien of the complainant, Myers, upon lands whereon the mill was located, and from whence it was removed to the land of Buchanan, the defendant herein.

The bill represents that, on the 16th day of April, 1861, one A. M. Brownlee being indebted to the complainant in the sum of $2,000 76, executed a deed to J. A. Orr, in trust, to secure the payment thereof, by which he conveyed to said Orr the lands described therein and in the bill ; that upon said land, at the time of said conveyance and for several years thereafter, was a steam, corn, wheat and saw-mill, the machinery, appurtenances, fixtures and house constituting a part of the freehold conveyed in said deed, worth about $3,500 ; that, during the summer of 1865, said Brownlee entered into a verbal contract with T. J. Buchanan, the defendant herein, by which they were to become joint and equal partners ; Brownlee was to erect a steam-mill on the lands of Buchanan, who was to convey to Brownlee one-half interest in the lands ; without the knowledge or consent of complainant, Brownlee removed from the land first described the lumber, machinery and fixtures, constituting the mill thereon, to the lands of Buchanan, whereon, with said lumber, etc., he proceeded to erect a mill in pursuance of the agreement mentioned above ; that the lumber, machinery and fixtures so removed were worth $1,178 78 ; the bill charges defendant with knowledge that Brownlee was removing these materials from the land first described, and with legal, if not actual, notice of the trust deed ; it also charges the laborers engaged in the erection of the partnership mill with knowledge of the same facts ; that on the 31st day of May, 1866, the original debt due complainant remaining unpaid, Brownlee executed another trust deed to B. F.

Owen, trustee, of the same lands described in the first trust deed, and also all the right, title and interest, legal and equitable, which said• Brownlee had to certain lands described, and to the mill-house, machinery and fixtures erected thereon, being the lands and mill in which a partnership had been formed between Brownlee and Buchanan, as a further security for the payment of said debt; that sales have been made under both deeds, the complainant becoming the purchaser in each; and claims to be vested with all the rights of Brownlee; that Brownlee recognizes the rights of complainant, as herein asserted, but defendant has taken possession of said property, claiming ownership to the exclusion of complainant; that Buchanan claims this property through a sale thereof by the sheriff, under an execution, upon a judgment in favor of certain mechanics who had assisted in erecting the mill upon the land of defendant herein, and who had obtained the said judgment to enforce their mechanics' lien, but to which complainant was not a party; that complainant attended the said sale, and gave notice to said Buchanan and others, by public proclamation, of his paramount lien; the bill prays that an account be taken of the value of the materials removed from the land of Brownlee, of the value of the materials, money, work and labor performed by Brownlee in the erection of the mill on the land of defendant, and of the profits realized by him from said mill since he assumed its control; with prayer for payment, and for other and further relief, etc.

The answer denies actual or constructive notice, or knowledge of the trust deed; denies that the mill was a part of the freehold upon the land of Brownlee; denies the value claimed in the bill, and denies the damage to the freehold by the removal, as alleged in the bill; denies that Brownlee erected a mill according to contract; avers the advancement of money by defendant to Brownlee in aid of the erection of the mill; sets forth the judgments obtained by the mechanics, October 2, 1866, on which the mill was sold December 3, 1866, the defendant becoming the purchaser; admits

defendant's knowledge of the removal of the mill and materials from the land of Brownlee, but denies notice of the trust deed; denies the removal without the knowledge of complainant.

Upon the exhibits and proofs with the pleadings, the case was heard and the bill dismissed, on the ground, as stated in the final decree, "that the allegations in said bill are not sustained by the proof." Several witnesses were examined at considerable length touching the value of the property removed, the cost of the re-erection, the terms of the agreement between Brownlee and Buchanan, the character of the mill erected, the date of the work and the time when the new mill went into operation.

The point upon which this case is supposed to depend, as suggested, is contained in an agreement in writing, signed by the respective counsel, and made a part of the record, of which the following is the material portion, viz.: "That, in the month of April, 1863, the records of the probate court of said county and state were in part burnt, mutilated and torn, that, during the whole of the year 1865, record book L of said office, together with all the record books of said probate court's office, was lying in one confused mass, without a back, index or margin, in the probate clerk's office;" which, for the purposes of the trial, it was agreed, might be read in evidence in behalf of the defendant. Neither complainant nor defendant were examined as witnesses. Brownlee was a witness in the case, but no question was put to him, and he gave no testimony with reference to actual knowledge on the part of the defendant or of actual notice to him of the deed of trust. The only evidence in the record on this point is found in the statements of N. C. Wright, one of the mechanics, who testified as follows on this subject: "I had no knowledge of any lien on the house until the day of sale under my judgment, when S. Myers came and forbid the sale; said he had a deed of trust on the property. I ordered the officer to sell, which he did;" and this is all the testimony in the record before us upon this

point. Whether Brownlee made any inquiries at the clerk's office in regard to liens upon the property in litigation, the record is wholly silent. The law favors diligence in this respect. Excepting the general language of the agreement as to the condition of the records, the testimony before us fails to explain the actual condition of record book L in which was recorded the deed of trust upon which complainant's claim depends. It appears that said deed was recorded April 25, 1861. The agreement of counsel describes the records as "in part" burnt, mutilated and torn; that "during the whole of the year 1865, record book L," "together with all the record books of said office, was lying in one confused mass, without a back, index or margin." "Record book L" and other "record books" are mentioned as "lying in one confused mass," but whether the leaves were separated and scattered is not clear, as the "books" are spoken of as in a "confused mass." We assume, as unquestioned, that these trust deeds were once duly recorded and indexed. Of a knowledge of this condition of the records on the part of Buchanan, the papers afford no information, nor does it appear that he sought to know whether there was a lien upon the property of Brownlee or not. The defendant and all the mechanics were fully informed of the fact that the mill upon Brownlee's place was being torn down to furnish materials for the erection of the mill upon the land of defendant.

The facts, then, of this case, chronologically stated, are these: A trust deed from Brownlee to Orr of lands of the former, wherein was the mill subsequently torn down and removed to the land of defendant; said trust deed dated and duly recorded in 1861; partial destruction of the records of Chickasaw county in 1863; in 1865, while the record books were lying in a confused mass, without back, index or margin, in a corner of the clerk's office, Brownlee and Buchanan entered into an arrangement by which the former was to erect a mill upon the land of the latter, in which, and in the land, they were to be joint owners and partners in the erection of

this mill; Brownlee, with the knowledge of Buchanan and the mechanics, tore down and removed the mill upon the lands embraced in the trust deed of 1861; the work of removal began in the fall of 1865; the re-building on the lands of defendant was commenced in February, 1866. N. C. Wright, one of the mechanics employed in the erection of the mill on defendant's land, and who obtained a judgment under the mechanics' lien-law, whereon the mill was sold to defendant herein, testified, with reference to his services, as follows: "I commenced work in February, 1866; there was no contract between myself and Brownlee, but I charged by the day for my work, $4 00; I obtained a judgment in the county court under the mechanics' lien, and had the house sold." This judgment was obtained in October, and the sale occurred in December, 1866. In May, 1866, Brownlee executed a second trust deed to Owens, trustee, embracing, specifically, the lands in the first trust deed, the lumber, machinery, and fixtures, and the mill, as well upon the land of Brownlee as upon the land of Buchanan, together with all the interest of Brownlee in the mill and lands whereon it stands, under the agreement between himself and Buchanan to secure the debt to Myers, which deed was duly recorded in May, 1866. At the sale, complainant appeared and forbid the sale, saying he held a deed of trust on the property, after which the sale took place by special order of the mechanics; it was agreed by counsel on the hearing that Henderson Orr, one of the mechanics in the proceedings against Brownlee to subject the mill to the lien of the mechanics, had no actual notice of the existence or record of either of the deeds of trust. N. C. Wright testified that there was one other mechanic employed at the same time under him, but that such other mechanic did not profess to be a skillful mill-wright; judgments were obtained by Wright and Henderson Orr, the above-named mechanics; the value of the lumber and materials of the mill torn down was variously estimated; defendant herein and all the mechanics were fully aware of the demolition of the mill

on Brownlee's land to become, in whole or in part, the mill on the land of Buchanan. It is charged in the bill, and not denied in the answer, that at and prior to the sale under the judgments in favor of the mechanics, public notice was given by Myers, complainant, of his lien and trust deed and the sale forbidden.

On the part of the complainant it is insisted that the trust deed to Myers in 1861, having been recorded according to the requirements of the Code, it was, then and thereafter, notice to all the world ; and the rights of complainant becoming thus fixed, could not be divested by the subsequent destruction or mutilation of the records ; while counsel for the respondent contends that, in consequence of the condition of the records in 1865, and of his neglect to re-record his deed under an act of the legislature, approved December 8, 1863, the complainant lost his lien, and the respondent, through the mechanics, acquired the superior right.

We are referred by counsel for respondent to the case of Speer v. Evans, 47 Penn. St. 141, as conclusive of this case against the complainant. That was a case of a mortgage copied into the proper record book, but never indexed. Subsequently, a judgment at law was obtained against the mortgagor, and the contest was between the mortgagee and the judgment creditor. Prior to actual sale under the judgment, personal notice of the mortgage lien was given to the judgment creditor. The court held the mortgage not duly recorded, and therefore not constructive notice, but sustained the lien of the mortgage upon the actual personal notice of its existence. As we understand the case referred to, it does not sustain the respondent. It is not a case of the destruction of records, but of a record which had not been made in accordance with the requirement of the statute. The prior mortgage lien, however, was sustained upon actual personal notice of its existence prior to a sale under a junior judgment lien ; and is, therefore, an authority for the complainant. While there are points of resemblance between that case and the one at bar, we may observe

that, in the former, the record of the mortgage was never indexed ; in the latter it was indexed ; in the former diligent search was made in the registry office for liens ; in the latter no diligence or inquiry is pretended ; in the former diligence was unavailable ; in the latter the result was not tested by inquiry, and we are left to conjecture as to the fruits of an inquiry and search upon the agreed condition of the records ; in both actual notice of the recorded mortgage was given after the judgment and before the sale. Notice at the sale herein is admitted by the pleadings, proved by the witness Wright and is undisputed, which establishes the complainant's right of recovery, assuming the case to turn upon this point.

We have, however, no hesitation in affirming the general proposition propounded by the complainant, and hold the deed of trust in favor of Myers, in 1861, constructive notice to all the world, notwithstanding the disordered condition of the records in 1865. It would be monstrous to declare a lien, acquired by a duly recorded mortgage, lost by a subsequent partial or total destruction of the records. Such a rule would subject every lien in the state to the hazards of accidental fire, the caprice of incendiaries, and the casualties of war. The law is with the complainant in the case at bar on both the main propositions presented by the record : 1st. There was constructive notice by the recorded mortgage ; 2d. There was, also, actual notice thereof prior to the sale under the subsequent judgment lien.

Reference is made by counsel to the act of the legislature, approved December 8, 1863, whereby the re-recording of deeds in certain cases was authorized. The language of the act appears to contemplate the destruction, loss or mutilation of the record of the particular deed sought to be recorded anew, and not to the records generally. In this case there is no evidence of any injury to the trust deed in question. Whether the legislature intended to pronounce records destroyed, lost or mutilated ineffectual and inopera-

tive by the above act, as insisted upon, it is impossible and unnecessary to determine. The act itself imposes no penalty or condition. It is permissive, and to be availed of by the party, the record of whose deed "has been lost, mutilated or destroyed; and such records anew," says the statute, "shall be as good and effectual in law or in equity as the original record might or could have been." We presume no such extraordinary effect as contended for was contemplated by this act, but that it was passed, in the discharge of a public duty, for other purposes than the unjust one of destroying the liens of those neglecting to avail themselves of this legislative enactment.

Authorities supposed to sustain the respondent may be briefly noticed. Otley v. Haviland et al., 36 Miss. 19, was under the law of 1840, and decided only that a mechanic might have a lien upon a building for labor and materials furnished in the erection thereof, to the exclusion of a prior lien on the land. But that is not the case at bar. There, the building was erected upon the land of the mortgagor, subsequent to an incumbrance by deed of trust. Harper et al. v. Tapley et ux., 35 Miss. 506, was an action of ejectment. The title of the plaintiff was by purchase under a judgment. The defense was based upon an unrecorded deed. The possession of the defendants was held to be constructive notice. Of the registry acts, the court said their object was "to enable a person about to purchase lands to ascertain whether they have been conveyed. In order to do this, the place where he must reasonably be led to make the inquiry, is the probate clerk's office of the county where the land lies. That is the place intended by law for recording the deed of conveyance; and if, upon examination, he finds no conveyance there, he is justified in acting on the belief that none has been made." The main doctrine of this case seems to be that a purchaser at execution sale stands in a position, at least as favorable as that of the judgment creditor, and hence notice to such purchaser, of an unregistered deed before the rendition of the judgment, will not avoid his

purchase, if it be not also shown that the judgment creditor had notice of it before his lien attached. The case cited is unlike the one at bar, in this, that, in the latter, there was a prior, registered lien, personal notice of which was also given before sale under the judgments, and further, that Buchanan made no examination or inquiry at the record office. In Henderson *v.* Downing et al., 24 Miss. 106, the contest was between claimants under an unrecorded deed of trust and title under a judgment, without notice to the creditor until after the enrollment of his judgment. The question in Dixon & Starkey *v.* Lacoste, 1 Smedes & Marsh. 70, was as to the effect of notice of a prior, unrecorded deed as against a judgment creditor, and constructive notice, or notice by possession, was held sufficient. We do not think these cases aid the defendant in error. Treating this case upon the basis upon which it appears to have been tried in the court below, and as it is presented in the argument of counsel here, the court erred if it held the deed of trust from Brownlee to Orr, trustee in 1861, inoperative because of the condition of the records of 1865.

The record impresses us with the equities of the complainant's case. It is as though the mill upon lands whereon was a valid lien, was put upon wheels, and moved bodily off and located upon the lands of the defendant. He knew whence it came, as did all the mechanics and laborers. For the materials of which the mill was composed upon the lands of Brownlee, Buchanan has paid nothing. He is enriched at another's expense. He has acquired a part of what was the freehold of another without cost, except what he paid the mechanics. This would seem to be unjust, and it would appear to be right that he should pay to the true owner the value of the materials by which he has been thus benefited. The facts, however, were not, in all their aspects, fully developed. For instance, the mechanic testified that he did not erect the mill by contract, but worked by the day. If this be so, the mechanics were not entitled to the benefits of the Code on that subject.

Again, the particulars of the sale by virtue of the deeds of trust are not given. The date of forfeiture of the first deed of trust does not appear; and, *quære*, whether the proceedings were in chancery, whether Buchanan was made a party thereto, whether, if in chancery, such proceedings, specially embraced, by suitable averments, the mill and its component parts, and particularly, whether upon the sale, if without reference to the removal of the mill, the said Myers bid for the land contained in the deed of trust, the full amount of Brownlee's indebtedness to him. In this latter event, he would, perhaps, be without remedy.

Under a different state of facts, a very serious question would arise, as if Buchanan were a *bona fida* purchaser for a valuable consideration of chattels, formerly a part of the realty, removed therefrom and restored to personalty by the mortgagor in possession, but such is not this case. Buchanan is not a purchaser, and has not paid any thing for the property. He is in possession with full notice. Thus a case apparently beset with difficulties is easily solved. We have examined the law on the subject of fixtures and their removal, as between mortgagor and mortgagee and third parties, and, without a discusssion thereof, append some of the authorities referred to. Amos & Heard on Fixtures; Dart on Vendors and Purchasers; Hill on the Law of Fixtures; Hilliard on Real Estate; Powell on Mortgages; Smith on Real and Personal Property; Williams on Real Property; Williams on Personal Property; 2 Kent, 342, 347, title Fixtures.

As to the claim of complainant to the interest of Brownlee under the contract of the latter with Buchanan, we have deemed it unnecessary to discuss, upon this record, leaving its further litigation to the discretion of the parties, without prejudice.

The decree dismissing the bill is reversed, and the cause remanded for further proceedings.